Argued and submitted August 13, affirmed September 24, 1997

STATE OF OREGON,
*Respondent,*

*v.*

HARRY O. BEAN,
*Appellant.*

(96-04-33161; CA A94796)

946 P2d 292

Jesse Wm. Barton, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Defendant appeals from his conviction for two counts of delivery of a controlled substance, three counts of possession of a controlled substance, one count of felon in possession of a firearm and one count of child endangerment. He assigns error to the trial court's denial of his motion to suppress evidence seized during an administrative inventory of his personal property.[1] We review for errors of law, *State v. Burr*, 136 Or App 140, 145, 901 P2d 873, *rev den* 322 Or 360 (1995), and affirm.

On April 18, 1996, defendant was walking on Southeast 187th Avenue in Gresham when Officer Seymour approached him and asked for identification. Seymour learned that defendant was on probation for unlawful use of a firearm. Seymour observed that defendant was intoxicated, and defendant admitted that he was "drunk on tequila." After determining that defendant was a danger to himself, Seymour took him into custody for the purpose of detoxification. ORS 430.399.[2] Before placing defendant in the secure, back seat portion of the police car,[3] Seymour patted him down

---

[1] This case only raises challenges to the City of Gresham's inventory policy, Gresham City Code 2.80.874, not officer safety considerations of the kind addressed in *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), under Article I, section 9, of the Oregon Constitution.

[2] *Former* ORS 426.460, *renumbered as* ORS 430.399, provides, in part:

"(1) Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have *reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility.* A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance.

"* * * * *

"(3) In the absence of any appropriate treatment facility, an intoxicated person or a person under the influence of controlled substances who would otherwise be taken by the police to a treatment facility may be taken to the city or county jail where the person may be held until no longer intoxicated, under the influence of controlled substances or incapacitated."

(Emphasis supplied.)

[3] The trial court record contains a conflict as to where defendant actually was located in the police car while he was transported to the Gresham police station.

and took his fanny pack. The lighting conditions on the street were "very, very poor." Seymour took defendant to the Gresham Police Department for subsequent transportation to the Multnomah County Detoxification Center.

At the police station, Seymour conducted an inventory of defendant's personal belongings, pursuant to Gresham's inventory ordinance.[4] Seymour searched the fanny pack and defendant's wallet as part of the inventory and

---

Seymour initially testified that defendant was placed "in the front of [the] car." However, later testimony and argument suggest that defendant was placed in the back seat. Because it is irrelevant to our analysis, we assume, as did the trial court and the parties, that defendant was placed in the secure, back seat portion of the car.

[4] Gresham City Code 2.80.874 provides, in part:

"(1) A police officer shall inventory the personal property in the possession of a person taken into police custody and such inventory shall be conducted whenever:

"(a) Such person will be either placed in a secure police holding room or transported in the secure portion of a police vehicle; or

"(b) Custody of the person will be transferred to another law enforcement agency, correctional facility, or 'treatment facility' * * *.

"(2) The purpose of the inventory of a person in police custody shall be to:

"(a) Promptly identify property to establish accountability and avoid spurious claims to property; or

"(b) Fulfill the requirements of ORS 133.455 to the extent that such statute may apply to certain property held by the police officer for safekeeping; or

"(c) Assist in the prevention of theft of property; or

"(d) Locate toxic, flammable or explosive substances; or

"(e) Locate weapons and instruments that may facilitate an escape from custody or endanger law enforcement personnel; or

"(f) Reduce the danger to persons and property.

"(3) Inventories of the personal property in the possession of such persons shall be conducted according to the following procedures:

"(a) An inventory will occur prior to placing such person into a holding room or a police vehicle, whichever occurs first. However, if reasonable suspicion [exists] to believe that the safety of either the police officer or the person in custody or both are at risk, an inventory will be done as soon as safely practical prior to the transfer of custody to another law enforcement agency or facility.

"* * * * *

"(c) A closed container in the possession of such person will have its contents inventoried only when:

"* * * * *

"(iii) the closed container is designed for carrying money and/or small valuables on or about the person including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs."

found over 95 grams of methamphetamine, drug paraphernalia, drug records and $776 in cash. Defendant subsequently was arrested for possession of a controlled substance and delivery of a controlled substance.

After Seymour read defendant his *Miranda* rights, defendant told Seymour that he lived with a woman and their small child and gave Seymour the address of his apartment. Subsequently, Seymour went to the apartment, spoke with defendant's girlfriend on the front porch and requested permission to check on the welfare of her child and to search the apartment for drugs. She consented to a search of the apartment. That search yielded more drugs, drug paraphernalia and drug records. The evidence seized as a result of the apartment search led to the additional counts of possession and delivery of controlled substances and endangering a minor.

At trial, defendant moved to suppress the evidence discovered during the administrative inventory and the search of his apartment. The trial court denied the motion.

On appeal, defendant first argues that Seymour did not properly follow Gresham's inventory policy when he opened and inventoried the contents of defendant's fanny pack and wallet and that the inventory "should be deemed invalid." According to defendant, Seymour should have inventoried the fanny pack and wallet before taking defendant to the Gresham police station. The state responds that the Gresham inventory policy "expressly authorizes the inventory that was conducted in this case." Defendant also argues that the section of the Gresham inventory policy that requires an inventory after a person is placed in the secure portion of a police car is unconstitutional because "the policy left to the officer's discretion the decision on whether to inventory the contents of the closed containers." The state responds that "whether the search occurs later rather than sooner is simply irrelevant," because "the point of the requirement that the officer have no discretion is to ensure that the politically accountable lawmaker decides *whether* something shall be searched and what the scope of that search shall be."

■ We first consider whether Seymour followed the Gresham inventory policy when he inventoried defendant's personal property at the police station. The Gresham inventory policy requires an inventory of the personal property in the possession of a person in police custody who will be placed in either "a secure police holding room or transported in the secure portion of a police vehicle." Gresham City Code (GCC) 2.80.874(1)(a). However, if the officer has *reasonable suspicion to believe that the safety of either the police officer or the person in custody or both are at risk, an inventory will be done as soon as safely practical* prior to transfer of custody to another law enforcement agency or facility." GCC 2.80.874-(3)(a) (emphasis supplied).

Seymour knew that defendant was on probation for the unlawful use of a firearm, and he observed that defendant's fanny pack was large enough to hold a gun or other weapon. Seymour also testified that the lighting conditions on the street were poor. The trial court concluded that, under those circumstances, Seymour had reasonable suspicion to believe that his safety was at risk if he conducted the inventory at the scene. We agree. Because he was reasonably concerned for his safety, Seymour was authorized by the city's inventory policy to wait to inventory defendant's personal property at the police station.

■ Defendant next argues that the Gresham inventory policy allowed Seymour to exercise unconstitutional discretion in deciding whether to inventory defendant's personal property at the scene or at the police station.[5] The Supreme Court has held that an "inventory must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *State v. Atkinson,* 298 Or 1, 10, 688 P2d 832 (1984). The rationale behind the "no discretion" requirement is to " 'adequately guard against arbitrariness,' " *id.* at 10 n 5 (citing 2 W. LaFave, *Search and*

---

[5] Defendant challenges the policy under both the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution. However, he makes no separate argument under the Fourth Amendment.

*Seizure* 576 (1978)), and to assure that property is not " 'singled out for special searching attention.' " *Id.* (citing *United States v. Hellman,* 556 F2d 442, 444 (9th Cir 1977)).

The Gresham inventory policy requires an officer to conduct an inventory at the next safe opportunity after the officer forms reasonable suspicion that the safety of the officer and/or the person in custody will be compromised by conducting an inventory at the scene. GCC 2.80.874(3)(a). The policy does not permit an officer to single out property for "special searching attention," and it "adequately guard[s] against arbitrariness."

■    Finally, defendant argues that the Oregon Constitution does not permit a lawmaking body to authorize police to inventory the contents of purses, wallets and similar containers possessed by intoxicated persons who are taken into custody and who will be lodged in a secure facility for detoxification. Defendant argues that Gresham City Code 2.80.874(3)(c)(iii), which authorizes inventories of fanny packs and wallets, is unconstitutional under *State v. Lippert,* 317 Or 397, 856 P2d 634 (1993); *State v. Okeke,* 304 Or 367, 745 P2d 418 (1987); *State v. Perry,* 298 Or 21, 688 P2d 827 (1984); and *State v. Newman,* 292 Or 216, 637 P2d 143 (1981). In the light of our opinion in *State v. Mundt/Fincher,* 98 Or App 407, 780 P2d 234, *rev den* 308 Or 660 (1989), that argument is not tenable. In *Mundt/Fincher,* we held that an inventory of closed containers intended primarily to store valuables was proper if performed pursuant to a properly authorized administrative program. Like a wallet or a purse, a fanny pack is intended primarily to store valuables. Discovery and inventory of the items contained within those containers is important to protect the owner's property and to prevent the assertion of false claims. *Id.* at 412.

■    The purposes of administrative inventories are to protect the owner's property while in police custody, to reduce and prevent the assertion of false claims against the police and to reduce the danger to police and others that can arise from the impoundment of uninventoried property. *See* GCC 2.80.872(2); *Atkinson,* 298 Or at 7. The purposes for an administrative inventory are the same regardless of whether

the person in custody is being held for detoxification or for criminal arrest.

In the light of this disposition, we need not address defendant's argument that the search of his apartment was an impermissible "exploitation" of the inventory. The trial court did not err in denying defendant's motion to suppress.

Affirmed.