Argued and submitted December 20, 1996; resubmitted En Banc January 13, affirmed April 22, petition for review denied September 29, 1998 (327 Or 554)

## STATE OF OREGON,
*Respondent,*

*v.*

## THOMAS NATHAN JOHNSON,
*Appellant.*

## (95C22466; CA A92167)

958 P2d 887

536

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

EDMONDS, J.

Armstrong, J., dissenting.

## EDMONDS, J.

Defendant appeals his conviction for possession of methamphetamine, a controlled substance. ORS 475.992-(4)(b). He assigns error to the denial of his motion to suppress evidence of controlled substances seized from a coin purse in a briefcase. We affirm.

Police received a telephone call that a suspicious person was loitering around an inoperative phone booth for about 45 minutes. An officer was dispatched to the location. When he arrived, he saw defendant with a bicycle near the booth. The officer contacted defendant, who identified himself. Based on that identification, the officer learned that there was an outstanding warrant for defendant's arrest. He arrested defendant and then searched defendant for weapons before placing him in his patrol car. In defendant's pocket, he found a glass jar with green vegetable material in it. In the officer's experience, the empty can with holes punched in it was consistent with a can that is used to smoke marijuana. The officer then turned his attention to the bicycle, on which there was a briefcase. At that point, police department policy required the officer to impound the bicycle together with any personal property in the possession of defendant. The officer asked defendant about the briefcase on the bicycle. The trial court found that, "[t]he defendant disclaimed any interest in a briefcase that was attached to the bicycle and said it did not belong to him."

The officer removed the briefcase from the bicycle because it was to be stored at a different location from the bicycle. While handling the briefcase, the officer felt a heavy cylindrical object in it that was consistent with the size and shape of a beverage can. The officer thought that the object might be a can containing an alcoholic beverage, a beverage not permitted to be kept in the jail facility to which defendant would be transported. On opening the briefcase, the officer discovered an unopened can of beer and another empty can with holes punched in it. The officer also found a coin purse located in a pocket of the briefcase. He opened the coin purse and discovered a powdery substance that he suspected to be methamphetamine. The officer put the coin purse back inside

the briefcase and took defendant, the bicycle and the brief-case to the Marion County Correctional Facility.

At the correctional facility, defendant was booked by another officer. The booking officer was not informed about the contents of the coin purse. As part of the booking process, the officer inventoried the property that defendant had with him. He opened the briefcase, searched its contents, discovered the coin purse, opened it and found the powdery substance. Defendant told the officer conducting the inventory that the briefcase was his. The contents of the coin purse were subsequently seized and tested positive for methamphetamine, resulting in the indictment in this case.

■ Before trial, defendant moved for an order suppressing the evidence of the methamphetamine under Article I, section 9, of the Oregon Constitution, and the Fourth Amendment of the United States Constitution. He did not claim a personal possessory or ownership interest in the briefcase in support of his motion[1] and did not testify in the hearing on the motion to suppress. The state offered the testimony of the officer who made the arrest and the testimony of the officer who conducted the inventory. On redirect examination of the officer conducting the inventory, the prosecutor elicited testimony that, during the inventory, defendant admitted that the briefcase was his. The trial court denied defendant's

---

[1] Defendant argued to the trial court, "An assertion of standing is not necessary under Article I, section 9, of the Oregon State Constitution. A criminal defendant always has standing to challenge the admission of evidence introduced by the State." He relied on the holding in *State v. McMurphy*, 291 Or 782, 635 P2d 372 (1981). In *McMurphy*, the court distinguishes between "standing" to object to a court's ruling on the admission of evidence against him and the invocation of rights personal to himself in evidence that the state proposes to use against him. *Id.* at 785. Defendant's argument is incorrect in two respects. The use of the word "standing" in regard to section 9 is a misnomer. "The term 'standing' should be used only in the narrow sense of the capacity to make a legal challenge." *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987). The proper inquiry under section 9 is whether defendant asserted that his personal rights were violated as distinguished from someone else's rights. Also, the right to assert a personal interest can be lost if the facts show that a defendant abandoned the interest in the seized object before the officer seized it. *See State v. Morton,* 326 Or 466, 470, 953 P2d 374 (1998).

Under the Fourth Amendment, defendant must establish a legitimate personal expectation of privacy in the briefcase. *See Rawlings v. Kentucky*, 448 US 98, 100, 100 S Ct 2556, 65 L Ed 2d 633 (1980) (holding that the defendant had no legitimate expectation of privacy with respect to his property located in his companion's purse).

motion, reasoning that defendant's disclaimer of any interest in the briefcase at the scene of the arrest "might in and of itself be enough to deny the motion here. Assuming arguendo that I'm wrong * * * then I'm going onto the second bas[i]s of the inevitable discovery in the administrative search process."

■ Defendant then waived a jury trial and entered into a stipulation of facts. The stipulation does not mention the officer's observation of methamphetamine at the scene of the arrest. On appeal, defendant assigns error to the trial court's rulings. He argues that the trial court erred in denying his motion as to the officer's observation at the scene of the arrest and makes several arguments regarding the inventory at the correctional facility. Assuming without deciding that the trial court's ruling about the officer's observation at the scene of the arrest is error, it is harmless. That evidence was not part of the evidence that led to defendant's conviction because it was not part of the stipulated facts at trial. Also, the arresting officer did not tell the inventory officer about his observation, and, therefore, the inventory is not derivative of the observation.

As to the inventory process, defendant told the trial court:

> "This matter could have been inventoried as a closed container. In fact, should have been inventoried as a closed container. The jail people have access to the courts. They had these facts to constitute probable cause to get a search warrant to search that item."

In his memorandum to the trial court, defendant relied in part on our holding in *State v. Ridderbush*, 71 Or App 418, 426, 692 P2d 667 (1984). In that case, we held that section 9 required that a small black box being inventoried by police, pursuant to an inventory policy, was to be listed by its outward appearance and that no closed, opaque container could be opened to determine what, if anything, was inside. *Id.* at 426.

We followed our holding in *Ridderbush* in *State v. Maynard*, 149 Or App 293, 942 P2d 851 (1997), in which we

held that it was unlawful to open a match box during an inventory. We said:

> "In this context, opening a container to determine its contents is not part of an inventory but is a search: it is an attempt to learn whether the container holds contraband or a threat to the officer's security. As *Ridderbush* holds, the Oregon Constitution does not permit a search unless the officer has a warrant or there is an exception to the warrant requirement." 149 Or App at 297.

The state argues that our holding in *Ridderbush* is not dispositive, relying on *State v. Mundt/Fincher*, 98 Or App 407, 780 P2d 234, *rev den* 308 Or 660 (1989). In that case, we held:

> "*Ridderbush* does not control the inventory of a wallet or a purse. Neither a wallet nor a purse is a 'closed, opaque container.' * * * [A] wallet typically has openings for inserting money, credit cards and other valuables; even when folded shut, it is not 'closed' in the way that the box in *Ridderbush* was. A purse usually has compartments for storing money and other valuables and frequently holds a wallet. *Because wallets or purses are primarily intended to be used to store valuables*, it may be important to discover what is in them, both to protect the owner's property and to prevent the assertion of false claims against the police. *See* ORS 133.455. Both are legitimate purposes for inventories of impounded property." *Id.* at 412 (emphasis supplied).

Similarly, the briefcase and the coin purse in this case are not "closed, opaque containers" because they are typically used to store valuables in the same way as a purse or a wallet. In that way, they are unlike the match box in *Maynard* or the small black box in *Ridderbush*. There, the opening of those containers constituted an "unreasonable" search under section 9 because, in an objective sense, those containers are generally not receptacles for valuables. On the other hand, a briefcase and a coin purse, when viewed objectively, are containers in which a reasonable person could expect to find valuables and to which an administrative policy designed to account for valuables would apply.[2]

---

[2] The Fourth Amendment does not bar inventory policies from authorizing the opening of closed containers. *Florida v. Wells*, 495 US 1, 3-4, 110 S Ct 1632, 109 L Ed 2d 1 (1990).

The difference between the majority and the dissenting opinion in this case is in the characterization given to defendant's briefcase. The dissent would hold that the officer conducting the inventory was required to inventory the briefcase as "one briefcase" without opening it to examine its contents. It reasons that "[u]nlike a wallet, a purse and even a fanny pack, a briefcase is not 'uniquely designed' to hold valuables. It is uniquely designed to carry papers or books." 153 Or App at 549.

In *State v. Bean*, 150 Or App 223, 225, 946 P2d 292 (1997), the defendant was walking down the street wearing a fanny pack when he was taken into custody on a civil detoxification hold. At the police station, the police conducted an inventory of his wallet and the fanny pack. As a result of the inventory process, the defendant was charged with possession of a controlled substance. *Id.* at 227. On appeal, he challenged the validity of the inventory on the same grounds that defendant asserts in this case. We held that the *Mundt/ Fincher* rule was applicable and rejected the argument that the inventory of the fanny pack was unconstitutional in light of the holding in *State v. Perry*, 298 Or 21, 688 P2d 827 (1984).[3] We held, "Like a wallet or a purse, a fanny pack is intended primarily to store valuables. Discovery and inventory of the items contained within those containers is important to protect the owner's property and to prevent the assertion of false claims." *Bean*, 150 Or App at 229.

Unlike the dissent, we discern no difference in function between the fanny pack in *Bean* and the briefcase in this case. Under the circumstances that existed in each case, each is a closed container that appears objectively to be intended primarily to store valuables in the same manner as a wallet or purse contains valuables. Those circumstances did not exist in *State v. Keller*, 265 Or 622, 625-26, 510 P2d 568 (1973), where a fishing tackle box in the defendant's vehicle, typically used to store fishing tackle and not valuables, was required to be inventoried as "one fishing box." Similarly, Perry was standing in front of a bus station with his suitcases

---

[3] In *Perry*, the court held that the opening of suitcases was an improper inventory when he was temporarily detained for purposes of detoxification. 298 Or at 28.

or "steamer trunk" in his possession. *Perry,* 298 Or at 24. Under those circumstances, those containers would typically not be considered as receptacles for valuables in lieu of a wallet or purse.

In contrast, Bean was walking down the street wearing a fanny pack and defendant was next to a public phone booth in possession of a bicycle with a briefcase on it, when the officers observed them. Bean's fanny pack was being worn in circumstances in which it could function like a wallet or purse. Similarly, defendant's briefcase typically could have performed the same function and contained articles like money, credit cards, valuable papers, a lap top computer or a calculator. That is why the briefcase falls into a category of containers that are subject to an inventory to protect the owner's property and to prevent the assertion of false claims and why a briefcase is distinguishable from articles like a matchbox, a steamer trunk and a fishing tackle box. The trial court did not err in denying defendant's motion to suppress on the ground that the briefcase should have been inventoried without opening it.

■■ Also on appeal, defendant argues for the first time that "the record does not establish a valid inventory policy" on which the inventory was based because "it does not demonstrate what politically accountable authority promulgated the inventory policy" and that the policy "was not 'noninvestigative.'" A valid inventory policy consists of a properly authorized administrative program, designed and systematically administered so that it involves no exercise of discretion by the officer taking the inventory. *State v. Atkinson,* 298 Or 1, 11, 688 P2d 832 (1984).

As part of his motion to suppress, defendant's counsel initially offered an affidavit in which he averred, "[t]hat any inventory associated with the Defendant which is a closed container should not have been searched and must be inventoried as a closed container when the Defendant is lodged at the jail." In its resp. -se in the trial court to defendant's motion and the affida:   the state supplied the court with excerpts of the Marion   unty Department of Correction Policy which provides, in  art, for the inventory of personal property of an inmate f r valuables including jewelry

and money. Thereafter, defendant filed a further memorandum in support of his motion in which he did not contest the lawfulness of the inventory policy, its scope or whether it was promulgated by politically accountable officials. At the hearing on the motion, defendant argued only that "this matter should have been inventoried as a 'closed container.' " The trial court concluded that a "valid inventory search was conducted."

The trial court has never had an opportunity to decide the issues presented by defendant's new argument on appeal. Moreover, in the absence of such a challenge below, the state has had no opportunity to meet those issues other than through its proffer in its initial memorandum, a proffer that was uncontested in the trial court. In *State v. Custer*, 126 Or App 431, 435, 868 P2d 1363 (1994), we said that, "even when the issue is not raised by the parties, a reviewing court must make a determination as to the authority under which the police impounded and inventoried the vehicle, as a prerequisite to declaring the inventory valid." *See also State v. Cook*, 136 Or App 525, 529 n 4, 901 P2d 911, *rev allowed* 322 Or 420 (1995). We relied on the following language in *Atkinson* for that proposition: "Apparently the parties and the court assumed that the vehicle was lawfully impounded. However, as a prerequisite to a lawful inventory, a determination as to the authority under which the police impounded the vehicle is necessary." 298 Or at 11. In *Atkinson*, the court remanded so that the trial court could make such a determination. Here, the trial court in its oral ruling said: "[The arresting officer] then took the defendant to * * * jail where a valid inventory search was conducted of all the defendant's property including this briefcase."

■ The rule of preservation of issues below for purposes of appeal is a judicially created rule of utility. It should only be applied where its purpose is fulfilled, and it should be applied across the board to all issues. Moreover, there is no discussion in *Atkinson* that suggests that the court contemplated creating an exception to ORAP 5.45(2) for inventory issues. Those concerns lead us to conclude that our application of the *Atkinson* language to the circumstances in *Custer* and the cases that follow it was error. If we were to adopt the rule of *Custer* under the circumstances of this case, it would

permit defendant to challenge on appeal for the first time *what had not been contested below*: the court's implicit ruling on the sufficiency of the state's evidence about its inventory policy. Such a result would effectively eviscerate ORAP 5.45(2). Under the circumstances, we hold that defendant did not preserve the issue that he now raises on appeal about the validity of the inventory policy. ORAP 5.45(2). In sum, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that the trial court did not err when it denied defendant's motion to suppress. I disagree. I agree with majority's conclusion that the illegal search of defendant's briefcase at his arrest was harmless because the evidence discovered during that search was not introduced at trial and because the inventory of defendant's briefcase was not derivative of that search.[1] I disagree, however, with its

---

[1] The majority assumes, without deciding, that "the trial court's ruling about the officer's observation at the scene of the arrest is error." 153 Or App at 539. I think it is worth noting that the Supreme Court's recent decision in *State v. Morton*, 326 Or 466, 953 P2d 374 (1998), establishes that the trial court's ruling was erroneous. In *Morton*, while the defendant was being placed under arrest, a plastic container fell from her jacket. The defendant " 'denied knowing what was in the container, denied having ever seen it[,] and denied ownership of the container.' " *Id.* at 468 (quoting *State v. Morton/Evans*, 137 Or App 228, 230, 904 P2d 631 (1995)). The officer arresting her seized the container, searched it and discovered methamphetamine. This court concluded that the defendant's disclaimer of any interest in the container established that she did not have a protected privacy interest in it and, as a result, she could not successfully challenge the seizure of it. The Supreme Court reversed. It held that, because the "defendant had, in fact, been in personal possession of the container in question only moments before it came into the possession of the police," the defendant had a protected interest in the container, despite her disclaimer. *Id.* at 469. Because she had a protected interest in the container, she could successfully challenge its seizure.

In this case, defendant had a bicycle and a briefcase with him when he was arrested pursuant to a warrant. He told the arresting officer that the briefcase belonged to a friend. The officer searched the briefcase in violation of Article I, section 9, and discovered what he suspected was a controlled substance. At the jail, defendant admitted the briefcase was his. Even if the trial court had accepted defendant's disclaimer of ownership, it is undisputed that defendant possessed the briefcase when the police seized it. Therefore, he had a protected privacy interest in the briefcase and the trial court erred in concluding that his disclaimer barred him from successfully challenging the initial search. As both the majority and I note, however, that error was harmless.

conclusion that the officer was authorized to open defendant's closed, opaque briefcase during the inventory at the jail. Because the officer conducted an illegal search under Article I, section 9, when he opened defendant's briefcase, defendant's motion to suppress should have been granted.

The Supreme Court has held that "[t]he degree to which an inventorying officer may scrutinize the items uncovered [in an inventory] is limited" by Article I, section 9, of the Oregon Constitution. *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984). It outlined those limits in *State v. Keller*, 265 Or 622, 510 P2d 568 (1973), and *State v. Perry*, 298 Or 21, 688 P2d 827 (1984), and it is clear that those limits were exceeded in this case.

In *Keller*, the police discovered a closed fishing tackle box in the back of the defendant's car. During the inventory of the defendant's property, the police opened the tackle box and discovered drugs. The Supreme Court held that the police had conducted an unreasonable search in violation of Article I, section 9, when they opened the tackle box, and that they should have inventoried the box as "one fishing tackle box" without opening it to determine its contents. *Keller*, 265 Or at 629.[2]

In *Perry*, a police officer found the defendant intoxicated in front of a bus station and took him in for detoxification pursuant to the civil detoxification statute. The defendant had two suitcases with him, which the officer impounded. At the police station, the officer inventoried the two suitcases, opening one of them to look for valuables. Instead of finding valuables, he discovered drugs. The defendant was charged with possession of a controlled substance. The trial court denied his motion to suppress the evidence discovered during the inventory and he was convicted. On appeal, the Supreme Court reversed. It stated that the issue was "whether the police may, without a warrant, in a noncriminal, nonemergency situation open a closed container seized from [an] intoxicated person at the time he is booked

---

[2] Although *Keller* was not specifically decided under the Oregon Constitution, the court's reference to *Keller* in *Atkinson* and *Perry* established that the principle established in *Keller* is applicable to inventories under the Oregon Constitution. *See State v. Ridderbush*, 71 Or App 418, 425, 692 P2d 667 (1984).

in at the holding facility." *Perry*, 298 Or at 26 (quotation marks omitted). The court concluded that opening a closed container in that situation, even to inventory valuables, constituted an unreasonable search, and the officer should have inventoried the suitcases as two closed suitcases. In reaching that conclusion, the Supreme Court said:

> "[A]ssume [that] the defendant in this case was arrested for driving with a suspended operator's license a 1929 Stutz Bearcat and sitting on the seat beside him were *all of his worldly possessions contained in two fishing tackle boxes* — one large and one small, but both secured by red ribbons. Defendant, car, and tackle boxes were taken to the police station. Then, change the facts and assume that the same defendant was taken into custody on a civil hold for being intoxicated as a passenger in the same vehicle and the officers take him and his two fishing tackle boxes to the jail.
>
> "Under both assumptions, an inventory could be carried out under the same administrative procedure. In the situation where the defendant was arrested for driving with a suspended operator's license, an alleged criminal act has triggered the impoundment and inventory of his property. *Under [Keller], the police could not open and inventory the contents of the containers.* However, *the State now argues* that when the defendant ends up in jail as a result of his intoxication or his being under the influence of a controlled substance, which is not a criminal act, *that the booking officer may open and inventory closed containers as a part of the jail's administrative procedure. We fail to see a distinction in the two situations which would persuade us to overrule [Keller]."*

*Id.* at 27-28 (emphasis supplied). Reading *Keller* and *Perry* together, it is clear that, according to the Supreme Court, opening a closed container during an inventory, even if the purpose is to safeguard a person's valuables, violates Article I, section 9.

We have recognized that point before. In *State v. Ridderbush*, 71 Or App 418, 426, 692 P2d 667 (1984), we analyzed *Keller* and *Perry* and concluded:

> "The Oregon constitutional limitation on inventories by the police of property [that] has come into their possession lawfully, but not incident to an arrest or pursuant to a warrant,

is simply this: property is to be listed by its outward appearance; *no closed, opaque container may be opened* to determine what, if anything, is inside it so that the contents may be inventoried in turn. This is a commendably clear and simple rule, easy to enforce in most circumstances[.]"

(Emphasis supplied.) Until today, we have followed that simple rule. *See, e.g., State v. Maynard,* 149 Or App 293, 942 P2d 851 (1997); *State v. Lane,* 135 Or App 233, 898 P2d 1358, *rev den* 322 Or 360 (1995). There is no reason for us not to follow it today. The officer in this case was searching for contraband when he opened the briefcase,[3] but even if he were attempting to inventory defendant's valuables, he should not have opened the briefcase but inventoried it as "one briefcase." By opening it, he conducted an unreasonable search under Article I, section 9, and any evidence derived from that search should have been suppressed. We are bound by Supreme Court precedent to reach that conclusion, and the majority errs by concluding otherwise.

Our decision in *State v. Mundt/Fincher,* 98 Or App 407, 780 P2d 234, *rev den* 308 Or 660 (1989), does not affect that conclusion. In that case, we observed that "[n]either a wallet nor a purse is a 'closed, opaque container.'" *Id.* at 412. "A wallet," we continued,

"typically has openings for inserting money, credit cards and other valuables; even when folded shut, it is not 'closed' in the way that the box in *Ridderbush* was. A purse usually has compartments for storing money and other valuables and frequently holds a wallet. Because wallets or purses are primarily intended to be used to store valuables, it may be important to discover what is in them, both to protect the

---

[3] During the hearing on the motion to suppress, the officer conducting the inventory testified:

"Q: Is it a policy with Marion County Correctional Facility to inventory closed containers as closed containers?

"A: I'm not sure what you're referring to.

"Q: If something—say like something comes in as closed and you don't see what's inside, do you inventory it as a closed container or do you go through and rifle through it and search it?

"A: We normally go through every container.

"Q: Okay. Is that your policy?

"A: *Our policy is to search for contraband.*"

owner's property and to prevent the assertion of false claims against the police. *See* ORS 133.455. Both are legitimate purposes for inventories of impounded property. * * * *Although other containers may also hold valuable property, wallets and purses are uniquely designed for that purpose.*"

*Id.* (emphasis supplied). Thus, according to *Mundt/Fincher*, because wallets and purses are *uniquely designed* to carry valuables, wallets and purses announce their contents, and, in that sense, are not "opaque" at all. Because the contents announced are primarily valuables, we held in *Mundt/Fincher* that an inventory policy can legitimately permit an officer to open them during an inventory. *Mundt/Fincher* did not overrule the closed container rule; indeed, this court does not have the authority to do that. Instead, in *Mundt/Fincher* we simply distinguished wallets and purses from "closed, opaque containers."[4]

Relying on our decision in *Mundt/Fincher*, we recently held that an inventory policy could permit an officer to open a fanny pack during an inventory because a fanny pack is similar to a wallet or purse. *State v. Bean*, 150 Or App 223, 229, 946 P2d 292 (1997). The result in that case can be reconciled with the Supreme Court's decisions in *Keller* and *Perry*, as well as our decisions in *Ridderbush* and *Mundt/Fincher*, if, like a wallet and a purse, a fanny pack is "uniquely designed" to hold valuables, and, in that sense, is not a closed, opaque container. However, that decision represents the outer limits of the principle established by *Mundt/Fincher*.[5]

---

[4] I will not try to defend the distinction drawn in *Mundt/Fincher*, because I am not sure that it withstands scrutiny. For purposes of this dissent, I will assume that *Mundt/Fincher* and its progeny make sense.

[5] One of our statements in *Bean* could be understood to expand improperly our decision in *Mundt/Fincher*. We said in *Bean*: "In *Mundt/Fincher*, we held that an inventory of closed containers intended primarily to store valuables was proper if performed pursuant to a properly authorized administrative program." *Bean*, 150 Or App at 229. That statement should be understood to stand for the proposition articulated in *Mundt/Fincher* that items that are "uniquely designed" to hold valuables like those that are typically found in a wallet or purse are not "closed, opaque containers," as that term was understood in *Ridderbush*. To the extent that it supports the majority's proposition that items that "typically" contain valuables can be opened during an inventory, the statement conflicts with *Mundt/Fincher*, *Ridderbush*, *Perry* and *Keller*.

Today, by concluding that a closed briefcase is not a closed, opaque container, the majority goes far beyond that limit and effectively eviscerates the closed, opaque container rule. The majority reaches that conclusion because, it states, a briefcase is "typically used to store valuables."[6] 153 Or App at 540. The fact that a briefcase *typically* stores valuables is irrelevant to our inquiry. Backpacks, beach bags, jacket pockets, camera cases, computer carriers and day-planners all may typically contain valuables, but, when closed, they are all closed containers that cannot be opened during an inventory. Indeed, suitcases may typically contain valuables. Nonetheless, in *Perry*, the Supreme Court held that an officer, even when looking for valuables, cannot open suitcases during an inventory. The relevant inquiry under *Mundt / Fincher* is not whether an item *typically* contains valuables, but whether it is *uniquely designed* to contain valuables.[7] Unlike a wallet, a purse and even a fanny pack, a briefcase is not "uniquely designed" to hold valuables. It is uniquely designed to carry papers or books.[8] Although it may hold valuable property, it is a closed container that cannot be opened during an inventory.

In this case, the officer conducted an unreasonable search under Article I, section 9, when he opened the briefcase during the inventory, and any evidence derived from that search should be suppressed. The constitutional interpretation that requires that result was established by the

---

[6] The majority also states that a coin purse is not a closed container. 153 Or App at 540. I agree that, if authorized, an officer conducting an inventory can open a coin purse under *Mundt / Fincher* because a coin purse is uniquely designed to carry valuables. That fact is immaterial to this case, however, because in order to discover the coin purse, the officer had to open the briefcase, which was a closed, opaque container. I also question the court's conclusion that briefcases typically contain valuables. We lack the knowledge to determine whether that statement is true.

[7] The final sentence of the paragraph in *Mundt / Fincher* that is relied on by both the majority and this dissent clarifies that the unique design of wallets and purses is the reason why wallets and purses can be opened during inventories. It states: "Although other containers may also hold valuable property, wallets and purses are uniquely designed for that purpose." *Mundt / Fincher*, 98 Or App at 412. When quoting that paragraph of *Mundt / Fincher*, the majority fails to include that critical sentence. *See* 153 Or App at 540.

[8] A briefcase is defined as "a flat flexible case usu[ally] with a handle that is designed to carry legal briefs or other papers." *Webster's Third New International Dictionary* 277 (unabridged ed 1993).

Supreme Court, and the majority errs when it rules otherwise.

Landau, Haselton and Wollheim, JJ., join in this dissent.