Argued and submitted March 31, affirmed August 11, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# TRACY DALE RUTLEDGE,
*Appellant.*

(9610-37490; CA A98858)

986 P2d 99

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was David Groom, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals his conviction for possession of methamphetamine, a controlled substance. ORS 475.992(4)(b) (1995). He assigns error to the denial of his motion to suppress evidence of controlled substances seized from a container found in the vehicle that he was driving at the time of his arrest. We affirm.

At the hearing on defendant's motion to suppress, Officers Shaw and Van Blokland testified about the circumstances leading up to and including defendant's arrest. Defendant drove out of a motel parking lot onto a street without stopping as required by ORS 811.505. The officers stopped defendant and asked him to produce his driver's license, registration and insurance.[1] When defendant did not comply with the request, the officers arrested him for failure to present a license. ORS 807.570. After handcuffing defendant, the officers conducted an inventory of the vehicle's contents preparatory to towing the vehicle.[2]

During the inventory process, Shaw found what appeared to him to be "a black leather coin purse between the front passenger seat and the center console." He showed the container to a passenger who had been in the vehicle and asked if it belonged to her. She denied ownership of it and said that she did not know to whom it belonged. Shaw "felt what [he] believed to be a wallet inside" the container. He opened the container, "looking for identification and found a black pocket scale." In addition, he found a plastic bag that held several small unused plastic bindles, a plastic bindle containing a substance later determined to be methamphetamine, a pink plastic straw, and razor blades. Shaw also opened the pocket scale and found three more full bindles.

Shaw advised defendant of his *Miranda* rights and asked him about the "coin purse." Shaw testified that defendant said "it was his sunglass case. [Defendant] stated that

---

[1] Defendant does not challenge the validity of the stop.

[2] Evidently, the Portland Police Department's policy is to tow an uninsured vehicle when the driver is taken into custody, even though in this case the vehicle belonged to the passenger. Defendant does not challenge the city's authority in that regard.

he had not worn the glasses in a day or so." When asked about the contents that Shaw had discovered in the container, defendant said that they were not his and that he did not think his passenger had placed them in the container. The discovery of the contents of the container led to the prosecution from which this appeal arises.

■■ Defendant assigns error to the trial court's denial of his motion to suppress, arguing that the section of the Portland City Code (PCC) authorizing inventories of towed vehicles did not provide authorization for Shaw to open the closed container under the circumstances.[3] The state responds that defendant failed to preserve that argument in the trial court because there he argued only that the state constitution prohibited the opening of the container.[4] An inventory may be conducted of possessions, including the opening of a wallet or a purse, without violating Article I, section 9, of the Oregon Constitution, if it is made pursuant to "a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion." *State v. Atkinson*, 298 Or 1, 8-10, 688 P2d 832 (1984). If the inventory here was constitutionally sufficient, then it is also sufficient under the ordinance unless the ordinance imposes additional requirements. Defendant does not contend that the ordinance contains requirements in addition to the constitutional requirements. In fact, the ordinance contains requirements similar to the inventory procedure that we considered and upheld in *State v. Mundt/Fincher*, 98 Or App 407, 412, 780 P2d 234, *rev den* 308 Or 660 (1989). We conclude that by challenging the validity of the inventory under Article I, section 9, below, defendant preserved his argument on appeal that the ordinance does not authorize the inventory.

---

[3] The ordinance defines a "closed container" as "a container whose contents are not exposed to view." PCC 14.10.020(C).

[4] Although defendant included provisions of the United States Constitution as grounds for suppressing the search in his motion, defendant abandoned that argument below. *See Florida v. Wells*, 495 US 1, 3-4, 110 S Ct 1632, 109 L Ed 2d 1 (1990) (holding that the Fourth Amendment does not bar inventory policies from authorizing the opening of closed containers).

PCC 14.10.030 provides, in part:

"(A) The contents of all vehicles impounded by a police officer will be inventoried. * * *.

"* * * * *

"(B) The purpose for the inventory of an impounded vehicle will be to:

"1. Promptly identify property to establish accountability and avoid spurious claims to property;

"* * * * *

"(C) Inventories of impounded vehicles will be conducted according to the following procedure:

"1. An inventory of personal property and the contents of open containers will be conducted throughout the passenger and engine compartments of the vehicle * * *;

"* * * * *

"3. *Unless otherwise provided in this Chapter*, closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes." (Emphasis added.)

PCC 14.10.040(C)(3) provides, in part:

"A closed container in the possession of such person will have its contents inventoried only when:

"* * * * *

"(c) the closed container is designed for carrying money and/or small valuables on or about the person including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs."

Thus, under the language of PCC 14.10.030(C)(3) and PCC 14.10.040(C)(3)(c), the officers were authorized to open the container if the container was "designed for carrying money and/or small valuables on or about the person," even though it was found between the seat and the console.

The physical characteristics of a container and the circumstances under which a container is found constitute

historical facts for purposes of appellate review. *See Mundt / Fincher*, 98 Or at 415. Historical facts, as found by a trial court, are binding on review if there is evidence in the record to support them. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). If findings are not made on all such issues, and there is evidence from which such facts could be decided in more than one way, then we will presume that the facts were decided in a manner consistent with the trial court's denial of the motion to suppress. *Id.* Whether the facts support a determination that the officers' inventory was conducted pursuant to the ordinance and ultimately satisfy the constitutional requirements for a warrantless search is a question of law. *Id.*

At the hearing, only Shaw testified about the physical characteristics of the container. He said that the container was "[a]pproximately five inches long, four inches high, made of soft leather and a zipper top." While holding the container, he described it in the following manner:

> "We have what is labeled[, on the property/evidence receipt,] as a sunglass case which I earlier referred to I believe it was a coin purse, black, with leather, there's a plastic bindle with white or tan powder residue. Film canister containing another bindle, Black's pocket scale contains three unused plastic bindles which has residue on it, and pink straw."

After defense counsel requested that Shaw look at the upper-left hand corner of the container, Shaw acknowledged that the word "Norelco" appeared on the container. Then, the trial court looked at the container and said:

> "The Court has seen more than which is indicated, there's a small—on the upper left-hand side of this at one time there was a clearer writing that looks like it said Norelco. It's not—it's worn, so it's not that easily seen. And on the other—on the zipper, the handle to the zipper has Norelco written on it."

The trial court indicated that the word "Norelco" was so small that a magnifying glass would be helpful in reading it.

After the evidentiary portion of the hearing was completed, the trial court ruled that "even though [the container] may not have been specifically designed to be a coin purse," a

reasonable officer looking at it "could make the determination that it was likely to contain money or valuables." On appeal, defendant argues:

"To affirm the trial court in the present case this court would have to find that the shaving kit searched in this case was 'specifically designed to carry money or small valuables' when the evidence is clear that the container was specifically designed to carry an electric razor."

Defendant's argument proves too much. The word "design" can mean to "have in mind as a purpose," as well as "to create." *Webster's Third New Int'l Dictionary*, 611 (unabridged ed 1993). In *State v. Johnson*, 153 Or App 535, 537, 958 P2d 887, *rev den* 327 Or 554 (1998), the defendant had been standing near his bicycle when an officer arrested him on an outstanding warrant. On the bicycle was a briefcase that was opened pursuant to a policy that provided for the inventory of valuables. The briefcase had a coin purse within it that was also inventoried. The defendant argued that the briefcase and the coin purse should have been inventoried without being opened because they were opaque closed containers, similar to a small black box that had been the subject of an inventory in *State v. Ridderbush*, 71 Or App 418, 692 P2d 667 (1985). 153 Or App at 539. Our discussion in *Johnson* informs the analysis in this case:

"[T]he briefcase and the coin purse [found in the briefcase] in this case are not 'closed, opaque containers' because they are typically used to store valuables in the same way as a purse or a wallet. In that way, they are unlike the match box in [*State v.*] *Maynard*[, 149 Or App 293, 942 P2d 851 (1997), *rev den* 327 Or 448 (1998),] or the small black box in *Ridderbush*. There, the opening of those containers constituted an 'unreasonable' search under section 9 because, *in an objective sense*, those containers are generally not receptacles for valuables. On the other hand, a briefcase and a coin purse, *when viewed objectively*, are containers *in which a reasonable person could expect to find valuables* and to which an administrative policy designed to account for valuables would apply.

"* * * * *

"* * *[W]e discern no difference in function between the fanny pack in [*State v.*] *Bean*[, 150 Or App 223, 226, 946 P2d

292 (1997), *rev den* 327 Or 448 (1998),] and the briefcase in this case. Under the circumstances that existed in each case, each is a closed container that appears *objectively* to be intended primarily to store valuables in the same manner as a wallet or purse contains valuables. Those circumstances did not exist in *State v. Keller*, 265 Or 622, 625-26, 510 P2d 568 (1973), where a fishing tackle box in the defendant's vehicle, typically used to store fishing tackle and not valuables, was required to be inventoried as 'one fishing box.' Similarly, Perry was standing in front of a bus station with his suitcases or 'steamer trunk' in his possession. [*State v.*] *Perry*[, 298 Or 21, 24, 688 P2d 827 (1984)]. Under those circumstances, those containers would typically not be considered as receptacles for valuables in lieu of a wallet or purse." *Id.* at 540-42 (emphasis added; footnotes omitted).

Here, the evidence supports the trial court's ruling that the leather container, resembling a coin purse, found in the vehicle between the front passenger seat and the center console was a container in which an officer could objectively and reasonably conclude that money or small valuables were typically and generally stored. The officer felt what he believed to be a wallet inside the container. Although the word "Norelco" on the container could indicate a different purpose for the container, the trial court found that the appearance of the word on the container was obscure and not readily apparent. In light of that finding, the container's size, appearance, and its location in the car, the court's determination, that the container appeared objectively to be intended or designed primarily to store valuables in the same manner as a wallet or purse, is supported by the evidence and is legally correct. Nothing in the record requires a contrary finding or provides other grounds for ruling that the officers failed to conduct the inventory according to the ordinance. The trial court did not err in denying defendant's motion to suppress.

Affirmed.