Argued and submitted October 31, 2006, reversed and remanded for new trial
July 11, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CHARLES GUERRERO,
*Defendant-Appellant.*

Marion County Circuit Court
04C43211; A125515

162 P3d 1048

Rebecca A. Duncan, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were

Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his conviction, which was based on a conditional guilty plea, for delivery of a controlled substance, ORS 475.992. He assigns error to the trial court's denial of his motion to suppress evidence that the police found inside a closed container during a jail inventory of defendant's property. We reverse.

The relevant facts are not in dispute. On March 25, 2004, defendant was a passenger in a car that Salem police officers stopped. The officers arrested him on an outstanding warrant and took him to the Marion County Jail. Defendant refused to consent to a search of his person. At the jail, Marion County Sheriff's deputies conducted an inventory of his possessions, which included, among other things, a black leather or artificial leather case marked "Panasonic Light Scope." The deputies opened the case and found the evidence that is at issue on appeal.[1]

In conducting the inventory, the deputies acted under the authority of the Marion County Sheriff's department's inmate personal property policy. The relevant portions of that policy provide:

### "DISCUSSION

"Prisoners' money and property will be taken at the time of admission. This will reduce or stop the introduction of weapons, drugs, and other contraband into the jail; protect prisoners' money and property from theft; make unavailable to prisoners those items which jail officials deem to be potentially harmful to the prisoner or others and assist in verifying the arrestee's identity.

---

[1] The officers and deputies found other evidence in places other than the black leather case; defendant does not challenge the admissibility of that evidence. The state notes that the additional evidence may make a victory for defendant on this appeal ultimately fruitless. However, as the state also notes, defendant will nevertheless be entitled to withdraw the conditional guilty plea that is the basis for his conviction if he prevails on appeal. *See State v. Mastin*, 205 Or App 528, 134 P3d 1052 (2006); *State v. Dinsmore*, 182 Or App 505, 518-19, 49 P3d 830 (2002).

## "POLICY

### "I

"It shall be the policy of the Marion County Sheriff's Office to ensure that all inmate personal property, including monies, is received, recorded, stored, and released in a safe, secure and systematic manner in accordance with the law.

### "PROCEDURE

### "II

"A. Receipting and Storing Property

"1. When an inmate is lodged into the Marion County Jail, all personal property including clothing, jewelry, money, etc. will be taken.

"* * * * *

"3. All items taken or retained by the arresting/transporting officer will be noted on the Inmate Property Inventory Form which the inmate will sign, the Receiving Deputy will cosign, and a copy will be issued to the inmate. The Receiving Deputy will obtain, if possible, a copy of the Detail Report from the arresting/transporting officer on all items of prisoner personal property that is confiscated or retained.

"4. All items of inmate personal property will be inventoried on an Inmate Property Form. The form will be signed by the prisoner and cosigned by the receiving deputy.

"* * * * *

"6. Inmates that cannot make bail or otherwise secure prompt release will have their money deposited into the inmate trust account. During the lodge process the money will be counted again. The deputy will enter the money into the automated system. At that point the deputy will place the money in an approved container with the inmates information attached and then place it into the safe in the property room."

No provision of the policy discusses what to do with closed containers or expressly authorizes a deputy to open a closed container for any purpose.

 Since the Supreme Court decided *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984), Oregon law has clearly distinguished between an inventory and a search. For that reason, we generally do not use the phrase "inventory search." As we explained in *State v. Tyler*, 168 Or App 600, 602 n 2, 7 P3d 624 (2000), that phrase is internally contradictory:

> "An inventory, whose purpose is simply to itemize what is present, is different in substance from a search, which is an endeavor to find evidence. The legal foundation and the rules for conducting an inventory are entirely different from those for a search."

The purpose of an inventory is to deal with property that properly comes into police custody in a noninvestigatory context. The two most common circumstances are when the police take control of an automobile, as in *Atkinson*, or when a person is being booked into a custodial facility, as in this case. *See, e.g.*, *State v. Ridderbush*, 71 Or App 418, 692 P2d 667 (1984). The police need to determine the nature of the property that they are holding for three principal reasons: (1) protection of the person's property while it is in police custody; (2) reduction or elimination of false claims against the police for lost property; and (3) protection against possible injury from impounded but uninventoried property. *Atkinson*, 298 Or at 7-8. None of those purposes involves searching for evidence of a crime.

 One essential aspect of the limitation on police inventories is to require the police to conduct the inventory "pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Id.* at 10. Another aspect is that the administrative program is itself subject to constitutional limitations. Most significantly, as a general rule, an inventory policy cannot authorize the police to open closed containers; in the classic example, the police must inventory a closed fishing tackle box as " 'one fishing tackle box.' " *Id.* (quoting *State v. Keller*, 265 Or 622, 626, 510 P2d 568 (1973)). The need to protect the police against false claims, thus, does not permit indiscriminate opening of and rummaging through closed containers.

■ In the wake of *Atkinson*, the Supreme Court and this court have decided a number of cases that elaborate on the basic principles that the Supreme Court established in that case. Under those cases, the first issue in deciding whether an inventory is permissible is to determine whether the officers complied with the administrative policy. Only if they did so would we need to consider whether the policy was constitutionally permissible. We examine several of those decisions insofar as they are pertinent to the circumstances of this case, beginning with cases addressing the issue whether the officers complied with the administrative policy.

In *Ridderbush*, we held that, generally speaking, the police must inventory property by its outward appearance; they may not open a closed, opaque container in order to inventory its contents. 71 Or App at 426. However, in *State v. Mundt/Fincher*, 98 Or App 407, 780 P2d 234, *rev den*, 308 Or 660 (1989), we recognized an exception to that rule where an inventory policy required the counting or recording of "cash, checks and other items of value typically found in a wallet or purse." *Id.* at 413. In *Mundt/Fincher*, the applicable inventory policy required the officers to " '[i]ndicate the breakdown of all cash and negotiable checks by coin, currency, and checks.' " *Id.* at 413 (quoting policy). We held that that requirement implicitly required officers to open a wallet or purse because those are containers in which such items typically are found. "The guidelines obviously were phrased generally to require inventory of *every* type of container designed or objectively likely to contain money or valuables, including wallets." *Id.* (emphasis in original). As a result, we held, the officers did not have discretion whether to inventory the contents of a wallet; they had been instructed to do so. *Id.* at 414.

After *Mundt/Fincher*, we examined identical Portland and Gresham City Code inventory policy provisions that required police to open and inventory the contents of closed containers designed for carrying "money and/or small valuables." In *State v. Bean*, 150 Or App 223, 946 P2d 292 (1997), *rev den*, 327 Or 448 (1998), we held that the Gresham policy authorized the opening and inventorying of the contents of a fanny pack. In *State v. Rutledge*, 162 Or App 301, 986 P2d 99 (1999), we held that the Portland policy authorized the opening and inventorying of the contents of a closed

container that appeared to be a coin purse. In *State v. Johnson*, 153 Or App 535, 958 P2d 887, *rev den*, 327 Or 554 (1998), we applied the same principle to a briefcase that, we noted, could function very much like a wallet or purse and could hold articles such as money, credit cards, valuable papers, a lap top computer, or a calculator. *Id.* at 542. Such containers were thus unlike the fishing tackle box in *Keller* or the steamer trunk in *State v. Perry*, 298 Or 21, 688 P2d 827 (1984), which normally would not be considered receptacles for valuables in place of a wallet or purse. *Johnson*, 153 Or App at 541-42.

In *State v. Swanson*, 187 Or App 477, 68 P3d 265 (2003), the applicable policy prohibited opening most closed, opaque containers but expressly required opening purses, wallets, fanny packs, backpacks, and similar items that were designed to carry valuables. We held that the policy did not authorize the officers to open a red purse accessory that an officer described as similar to a cosmetic bag; there was no basis for the court to find that the accessory was designed to contain valuables. The court could not rely on its own understanding that women often carry valuables in such a container. *Id.* at 484-85.

Most recently, in *State v. Connally*, 339 Or 583, 125 P3d 1254 (2005), the Supreme Court examined the Portland City Code inventory policy that we had previously considered in *Rutledge*. Importantly, the court engaged in a statutory construction exercise to determine the scope and meaning of the ordinance. *Connally*, 339 Or at 588 ("In determining what the [ordinance] authorizes, we begin with the text and context of that ordinance. *See Lincoln Loan Co. v. City of Portland*, 317 Or 192, 199, 855 P2d 151 (1993) (applying statutory construction methodology to municipal ordinances)."). After initially concluding that two code sections authorized officers to open some closed containers that they found while inventorying the contents of an impounded vehicle, the court addressed the issue whether a particular provision authorized the officers to open the defendant's fanny pack that they found in that case. That code provision, which was identical to the provisions that we considered in *Bean* and *Rutledge*, authorized officers to inventory the contents of a closed container " 'in the possession' " of a person taken into police custody when the container " 'is designed for carrying money

and/or small valuables on or about the person including, but not limited to * * * closed fanny packs.' " *Connally*, 339 Or at 590 (quoting policy; ellipsis in *Connally*). As pertinent here, the defendant did not dispute that the fanny pack was a container designed for carrying money and/or small valuables. Instead, he argued that the fanny pack was not in his possession when the officers inventoried its contents. Using the same statutory construction methodology, the court went on to interpret the ordinance as it related to the temporal importance of the defendant's possession of the fanny pack. *Id.* at 591-92.

■ ■ As noted, where the officers complied with the applicable administrative policy, a defendant may question whether the policy was constitutionally permissible. A valid policy must eliminate the officers' discretion about what containers to search. In *State v. Willhite*, 110 Or App 567, 824 P2d 419 (1992), the applicable policy required the officer to complete an inventory of the property in a seized automobile. It then stated, " 'If the property is of great value (*i.e.*, jewels, money, expensive camera, portable sample kits, etc.), that property will be noted on the standard Property Receipt Form and will be taken to the Property Room.' " *Id.* at 571-72 (quoting policy). The policy gave no further guidance to the officers about conducting the inventory. We held that the policy adequately eliminated individual discretion about whether to conduct an inventory but that it did not curb discretion concerning the scope of the inventory. The policy was so general that it authorized the officers to look everywhere they could think of rather than to follow standard procedures. *Id.* at 573-74. The policy in *Willhite* thus authorized a search based on the officers' personal sense of where something might be found, leading to a probable cause inquiry that might be appropriate in a search for evidence of a crime but that was precisely what the Supreme Court in *Atkinson* proscribed in an inventory. *Id.* at 574.

■ With the foregoing principles in mind, we turn to the parties' arguments in this case. The state asserts that, although the Marion County Sheriff's policy does not expressly require officers to open closed containers similar to this black leather case, it implicitly does so. As in *Mundt/ Fincher*, the state argues, the requirements to take money and jewelry and to deposit money in the inmate trust account

require the officers to open containers that, when viewed objectively, might contain those things. Defendant argues that the policy does not expressly authorize the opening of the closed container in this case and that, if it does so implicitly, it gives officers impermissible discretion as to what containers they will open.

We conclude that the policy in this case did not authorize the opening of the subject container. That policy does not refer to opening closed containers of any sort, let alone expressly authorize doing so. As a result, it does not attempt to describe what sort of closed containers an officer might open. Although the policy does require officers to preserve an arrestee's money and other property, unlike the provision that the courts construed in *Connally*, *Bean*, and *Rutledge*, it does not refer to nonmonetary valuables other than jewelry.

In light of *Mundt/Fincher*, the policy's requirement to take an arrestee's money and jewelry and to "count" money arguably was sufficient to authorize the officers to open closed containers that are designed to contain money or jewelry. In contrast, the black leather case in which the officers found the evidence at issue in this case appears to be designed, as its label indicates, to hold a Panasonic light scope. That is, it is a single-purpose container that is designed to hold a specific nonmonetary item. In that respect it is similar to the purse accessory kit in *Swanson*. Although it is possible to carry many things in such a leather case, as it is possible to carry many things in a purse accessory kit besides cosmetics, neither is uniquely designed or objectively likely to contain anything that the applicable policy required the police to inventory. Unlike the policy at issue in *Connally*, the policy in this case did not, either expressly or implicitly, authorize the opening and inventorying of the contents of closed containers designed to hold generic "valuables."[2]

---

[2] We hasten to add that we do not assume that a Panasonic light scope necessarily would qualify as a "valuable." Again, that would be a question of ordinance construction if an applicable code provision were to authorize the opening of containers designed or likely to hold such things. The Portland ordinance, for example, defines a "valuable" as:

"1. Cash money of an aggregate amount of $50 or more; or

"2. Individual items of personal property with a value of over $500."

Accordingly, by the terms of the policy, the leather case should have been inventoried based on its outward appearance. *See Mundt/Fincher*, 98 Or App at 415. It follows that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

*See State v. Kendall*, 173 Or App 487, 495, 24 P3d 914 (2001) (quoting PCC § 14.10.020).