Argued and submitted February 28, reversed and remanded May 16, 2012

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAVID BRIAN TAYLOR,
*Defendant-Appellant.*

Umatilla County Circuit Court
CFH090187; A144468

279 P3d 254

Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Edmonds, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant was convicted of possession of methamphetamine, ORS 475.894. He appeals, assigning error to the trial court's denial of his motion to suppress evidence found in a closed container—a cigarette box—during a warrantless search of his person. The trial court concluded that, although the search was unlawful, the evidence was nevertheless admissible because the police inevitably would have discovered it pursuant to a valid jail inventory policy. Defendant argues that the inventory policy at issue would not have permitted the search of his cigarette box and that, in any event, the policy is constitutionally infirm. We conclude that the inventory policy violates Article I, section 9, of the Oregon Constitution.[1] Accordingly, we reverse and remand.

The relevant facts are undisputed. Defendant was arrested on suspicion of domestic assault. The arresting officer handcuffed defendant and searched his pockets for weapons. The officer found a cigarette box, which he seized and handed to a second officer. That officer opened the cigarette box and discovered what he suspected, and defendant admitted, was methamphetamine.

Defendant was charged with possession of a controlled substance. Before trial, he moved to suppress the evidence found during the warrantless search of the cigarette box, arguing that it had been obtained in violation of Article I, section 9. The state argued that the search was justified as a valid "search incident to arrest." Alternatively, the state argued that the evidence inevitably would have been discovered during an inventory of defendant's property at the Umatilla County Jail. The applicable inventory policy provided, in relevant part:

> "**POLICY**: It shall be the policy of the Umatilla County Jail (UCJ) to ensure that all arrestee/inmate personal property is received, inventoried, stored, and released

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

in a safe, secure and systematic manner, in accordance with the law. This policy ensures the safety of the facility through effective weapons and contraband control[ ] and establishes authority to conduct inventories of the personal possessions of arrestees during pre-booking, the booking process, or lodging at UCJ. The purpose of this policy is to inventory the property of the arrestee to protect private property, reduce or prevent false claims for lost or stolen property, and protect people and property from any hazardous condition or instrument which may be with an arrestee's personal property.

"**DEFINITIONS**:

"Contraband:   Any item which presents a safety and/or security concern to the UCJ, staff, or arrestee shall be considered contraband.

"Personal Property:   Includes, but [is] not limited to, all clothing, jewelry, and money.

"* * * * *

"**PROCEDURE**:

"Processing and/or Lodging:   When an arrestee is brought to the UCJ for processing and/or lodging *all personal property shall be inventoried. Property shall be searched to ensure no weapons, drugs, or contraband items* are brought into the UCJ and authorized property is properly stored. Any item which may cause concern for the safety and/or security of the UCJ, staff, or arrestee/inmate shall be considered contraband and may be confiscated.

"Property of Arrestee—Pre-Booking Process:   *Personal property from the arrestee's pockets[ ] (money, wallet, etc.)[,] outer clothing, purses, jewelry, belts, or other items deemed appropriate shall be removed, inventoried, searched, and documented* on the Property Receipt Form and safely stored. Officer and arrestee will sign the Property Receipt Form, noting the confiscation of property taken."

(Numbering omitted; underscoring and boldface in original; emphasis added.)

The trial court rejected the state's first argument but agreed that, in any event, the jail inventory policy would have authorized the search of the cigarette box. The court concluded that,

"[w]hile it might be better that the policy clearly state that closed containers will be examined for contraband or dangerous things or substances, the policy essentially states such, and is constitutional and eliminates any arguable discretion that the corrections officers could have in inventorying and logging an inmate's property. The evidence found, the methamphetamine in the cigarette packet, otherwise obtained in violation of a defendant's rights under Article I, section 9, are admissible as the state has demonstrated * * * that police would have used certain proper and predictable investigatory procedures * * * that would inevitably have resulted in discovery of the evidence at issue."

Defendant subsequently entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.

On appeal, defendant argues that the inventory policy would not have authorized a search of his cigarette box and that, if it did, the policy would not meet the constitutional requirements set forth in *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). As to the latter argument, defendant contends that the policy does not eliminate officer discretion about which containers to search and, in effect, allows an officer to indiscriminately rummage through an arrestee's property. Furthermore, to the extent that the policy explicitly or implicitly authorizes searching closed containers for dangerous property, such as "weapons, drugs, or contraband items," defendant argues that the policy goes beyond the permissible purposes of an inventory under *Atkinson*.

The state responds that the policy requires a booking officer to "search" all personal property for weapons, drugs, and contraband. Thus, in the state's view, an officer has no discretion regarding what property to search—the officer must search all personal property, including closed containers, that "he or she reasonably believes contains weapons, drugs, or contraband items." The state argues that that policy "is not overly broad in scope because [it] is limited to property that could reasonably contain weapons, drugs, and contraband items. * * * [T]he scope is rationally related to the purpose of keeping the jail facility safe."

Under Article I, section 9, a warrantless search is *per se* unreasonable unless it is conducted pursuant to a recognized exception to the warrant requirement. *State v. Connally*, 339 Or 583, 587, 125 P3d 1254 (2005). Here, there is no contention that a "recognized exception" justified the warrantless search of defendant's cigarette box at the time of his arrest.[2] Rather, the only issue presented is whether the evidence obtained as a result of that unlawful search inevitably would have been discovered, absent the unlawful police conduct, pursuant to a valid jail inventory policy. *See State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005) (state may establish that illegally obtained evidence is admissible by proving that "the police inevitably would have obtained the disputed evidence through lawful procedures even without the violation of the defendant's rights under Article I, section 9"). For the state to prevail on an inevitable discovery theory, it must establish, "by a preponderance of the evidence: (1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question." *State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986).

In this case, there was evidence that, had the police not seized and searched defendant's cigarette box following his arrest, the cigarette box would have been transported with him to jail and subjected to the jail's inventory procedures. Nonetheless, the state failed to show that those procedures would have been "proper and predictable," because the Umatilla County Jail inventory policy authorizing those procedures is unconstitutional.

The purpose of an inventory is to itemize property that lawfully comes into the administrative custody of the police. *Atkinson*, 298 Or at 8; *State v. Guerrero*, 214 Or App 14, 18, 162 P3d 1048 (2007). That situation most commonly arises when police impound an automobile, *see Atkinson*, 298 Or 1 (automobile inventory), or when a person is being booked into a custodial facility, *see Guerrero*, 214 Or App 14

___

[2] The state does not contend on appeal that the search was justified as a valid "search incident to arrest."

(jail inventory); *State v. Perry*, 298 Or 21, 688 P2d 827 (1984) (civil detoxification hold).

> "The police need to determine the nature of the property that they are holding for three principal reasons: (1) protection of the person's property while it is in police custody; (2) reduction or elimination of false claims against the police for lost property; and (3) protection against possible injury from impounded but uninventoried property. *Atkinson*, 298 Or at 7-8. None of those purposes involves searching for evidence of a crime."

*Guerrero*, 214 Or App at 18. Importantly, reliance on the third justification for an inventory—the possible danger to police or others from impounded but uninventoried property—"must have a concrete basis in specific circumstances; it *may not simply be assumed as a basis of a general precautionary practice.*" *Atkinson*, 298 Or at 8 (emphasis added); *see id.* at 7-8 (suggesting that an inventory for the safety of police would be permissible where, for instance, the owner of an impounded vehicle is affiliated with a group suspected of bombing).

In addition, *Atkinson* identified certain constitutional limitations on police inventories. As relevant here, an inventory "must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Id.* at 10. Moreover, the scope of the inventory must be limited so that objects are "scrutinized only to the extent necessary to complete the inventory." *Id.* Consistently with that principle, we have since held that, "as a general rule, an inventory policy cannot authorize the police to open closed containers; in the classic example, the police must inventory a closed fishing tackle box as 'one fishing tackle box.'" *Guerrero*, 214 Or App at 18 (citations and some internal quotation marks omitted); *see also State v. Keady*, 236 Or App 530, 533, 237 P3d 885 (2010) ("Generally, police officers cannot open closed, opaque containers to inventory their contents."). However, we have recognized an exception to that general rule where an inventory policy requires an officer to inventory items of value. In that circumstance, we have determined that the policy implicitly requires an officer to

open containers—such as wallets, purses, and fanny packs—that are uniquely designed or objectively likely to hold valuables, and that such a policy is constitutional. *See Guerrero*, 214 Or App at 19-21 (discussing cases). We have not extended that exception to containers that are objectively likely to contain weapons, drugs, or other contraband.[3]

Defendant contends that the Umatilla County Jail inventory policy is invalid to the extent that it authorizes the inspection of property—particularly the interior of closed containers—for the purpose of finding weapons, drugs, or other contraband. In other words, defendant questions whether security or safety concerns can validly justify a jail inventory—a procedure in which most property, including closed containers, will be confiscated and stored in a place inaccessible to the arrestee. We need not decide that question in this case.[4] Even assuming that a jail inventory policy could constitutionally authorize the opening of containers for the purpose of finding dangerous contraband, the inventory policy in this case is, in any event, unconstitutional.

The policy is silent regarding closed containers. However, it provides that property "shall be searched to ensure no weapons, drugs, or contraband items are brought into the UCJ." It also provides that "[p]ersonal property from

_____

[3] Indeed, such an exception might swallow the limitations on inventories.

[4] We recognize that security may be a valid justification for administrative searches in contexts where property would otherwise remain accessible to persons entering the secure portion of a facility. *See, e.g.*, *State v. Coleman*, 196 Or App 125, 127, 100 P3d 1085 (2004), *rev den*, 338 Or 16 (2005) (limited search for safety of detainees in "controlled waiting room" of police station); *Smith v. Washington County*, 180 Or App 505, 43 P3d 1171, *rev den*, 334 Or 491 (2002) (courthouse security screening); *see also U.S. v. McCarty*, 648 F3d 820 (9th Cir 2011) (airport screening searches are constitutionally reasonable administrative searches under the Fourth Amendment to the United States Constitution where properly limited in extent and intensity). Of course, those searches must still be reasonable in relation to their purpose. *Weber v. Oakridge School District 76*, 184 Or App 415, 437, 56 P3d 504 (2002), *rev den*, 335 Or 422 (2003). In the jail inventory context, it is not apparent how the purpose of safety would be served by allowing officers to open closed, opaque containers to look for contraband where those containers can be seized, inventoried by their outward appearance, and placed securely in storage. *See State v. Lippert*, 317 Or 397, 404, 856 P2d 634 (1993) (in the context of civil detoxification holds, "this court has held that Article I, section 9, * * * is violated when officers conduct a search of closed, opaque containers * * * that do not announce their contents and that are not going to be placed * * * into the secured portion of the detoxification facility").

the arrestee's pockets * * * or other items deemed appropriate shall be removed, inventoried, searched, and documented." The state argues that both of those provisions explicitly require an officer to "search," and therefore implicitly require him or her to open and inventory, the contents of all containers that the officer reasonably believes contain contraband, which would include defendant's cigarette box. According to the state, that requirement eliminates officer discretion and is sufficiently related to the purpose of keeping the jail facility safe. We disagree.

The policy is not, in fact, limited to opening only those containers that are objectively likely to contain contraband. *See Guerrero*, 214 Or App at 19 (stating general rule that "police must inventory property by its outward appearance"). Instead, the policy requires an officer to search property that he or she "deem[s] appropriate," without regard to whether that search will further the security of the facility. Rather than confining police discretion to the opening of containers uniquely designed or objectively likely to contain contraband, the policy gives wide latitude to an implementing officer to decide which closed containers to look inside and what degree of scrutiny to apply to any given piece of property. Indeed, by its very terms, it authorizes not just an itemization of property but a "search," inviting officers to engage in a probable cause inquiry that is appropriate in the investigation of a crime but not in the context of an inventory. That grant of discretion is improper and renders the policy invalid. *See, e.g., State v. Willhite*, 110 Or App 567, 574, 824 P2d 419 (1992) (policy that was so general that officers could look anywhere entailed "precisely the kind of individual discretion" that an inventory is supposed to preclude); *State v. Eldridge*, 207 Or App 337, 142 P3d 82 (2006) (similar).

In the same vein, the policy is defective because it contains no complete and meaningful limitation on the scope of the inventory. It effectively authorizes a search of all property, including any closed container, regardless of what the container is objectively likely to hold. *See, e.g., State v. Williams*, 227 Or App 453, 457, 206 P3d 269 (2009) ("An inventory policy that requires police to open all closed containers, regardless of whether they are likely to contain valuables, is overbroad."); *State v. Kay*, 227 Or App 359, 206 P3d

208 (2009) (inventory policy permitting an officer to open all closed containers was too broad to satisfy constitutional constraints). Thus, the policy goes beyond the constitutional limitations of Article I, section 9, and, therefore, is invalid. The evidence should have been suppressed.

Reversed and remanded.