Argued and submitted October 31, 2013, reversed and remanded April 30, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ARTHUR LEE DAVIS,
*Defendant-Appellant.*

Lane County Circuit Court
201026154; A149843

325 P3d 790

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant stands convicted of one count of unlawful possession of methamphetamine, ORS 475.894; he appeals from the judgment of conviction, assigning error to the trial court's denial of his motion to suppress evidence. That evidence included a methamphetamine pipe, which was concealed in a sock that defendant had stowed in the pocket of his coat. A police officer discovered the sock while patting defendant down in conjunction with defendant's arrest on an outstanding warrant; the officer then opened the sock and observed the pipe. Defendant contends that the warrantless opening of the sock violated Article I, section 9, of the Oregon Constitution[1] and that the trial court erred in denying his motion on the ground that the discovery of the pipe could be sustained under the Lane County Sheriff's Office inventory policy. For the reasons below, we reverse and remand.

We review the denial of a motion to suppress for errors of law; we defer to the trial court's factual findings when there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Springfield Police Officer Quinones arrested defendant on an outstanding warrant. After placing defendant in handcuffs, Quinones patted him down to search for weapons and any implements that defendant might employ to make an escape. While doing so, Quinones felt a four-inch-long, cylindrical object with a bulb at one end in the pocket of defendant's coat. Quinones removed the object, which was contained in a closed white sock, from defendant's coat; he did not directly observe the object but stated that it felt like glass. When Quinones placed the sock on the hood of his patrol car, he recognized the sound of glass hitting metal. At that point, Quinones believed that the object was a pipe used for smoking illegal drugs.

Quinones opened the sock and observed that the object was a pipe with carbonized residue on it. He asked

---

[1] Article I, section 9, of the Oregon Constitution provides, in pertinent part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

defendant what the pipe was for; defendant responded that it looked like it was for smoking meth. He then asked defendant what substances would be revealed by a test of the pipe; defendant responded, "meth." Defendant was then taken to the Lane County Jail.

Defendant moved before trial to suppress both evidence of the pipe and all derivative statements that he made to the police on the ground that Quinones's act of opening the sock constituted an unlawful search. In response, the state contended that the act of opening the sock was justified as a valid search incident to arrest or, in the alternative, that suppression was not warranted because Quinones opened the sock while acting in compliance with the Lane County Sheriff's inventory policy. After a hearing, the trial court rejected the state's search-incident-to-arrest arguments:

> "I think the officer was candid with me when he said that he had established probable cause. I believe he had probable cause to arrest [defendant] for the charge of possessing drugs or dealing drugs at the time that he saw the pipe, but that would have been after he opened the sock. Therefore, * * * I reject the State's argument that the search incident to arrest justifies the opening of the sock."

The trial court nonetheless accepted the state's alternative argument and made the following findings and conclusions:

> "The State offers an alternative basis for the search, and that's an inventory search. And the officer testified that he was conducting an inventory search as well as a search incident to arrest at the time of the arrest. The officer testified that he was aware of the policy and that frankly the policy would—requires him to thoroughly search the arrestee's clothing. And I find he was acting in compliance with that policy at the time he did conduct that search and at the time that he removed the bag from [defendant's] pocket.

> "I also find that, given his testimony that it was clear to him that—based on his training and experience at the time that he felt the bag [sic] after he removed it, that it contained a pipe that was used either to smoke meth or heroin. That he believed it was contraband, and pursuant to the policy he would be required to seize that—open that bag [sic] and seize that pipe and not allow it to be entered into the Lane County [J]ail.

"Therefore I find that his opening of the bag [*sic*] was valid pursuant to Lane County Adult Corrections policy regarding inventory searches, and will be allowed."

The trial court denied defendant's motion to suppress. Defendant was subsequently convicted of violating ORS 475.894 following a jury trial. This timely appeal followed.

As noted, defendant assigns error to the trial court's denial of his motion to suppress. We begin by noting several features of this case that significantly narrow the issue in this appeal. First, the state has abandoned its unsuccessful efforts below to justify Quinones's opening of the sock as a search incident to defendant's arrest.[2] *See, e.g., State v. Owens*, 302 Or 196, 200-04, 729 P2d 524 (1986) (describing that exception to the warrant requirement). Second, the state concedes that the sock was a closed container. Third, defendant does not contend that there was any unlawfulness in his arrest or in Quinones's seizure of the sock. Thus, the dispositive legal issue in this case is whether the inventory policy was sufficient, as a constitutional matter, to support the trial court's denial of defendant's motion to suppress. A valid inventory policy is one that is "designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." [*State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984)].

At the time of defendant's arrest, the inventory policy stated, in pertinent part:

"**02.02.06 Property:** Arresting officers shall inventory all pocket property on property forms provided by [the] Lane County Sherriff's Office:

"A. Arresting officers shall be responsible for thoroughly searching the arrestee's clothing and inventorying the arrestee's personal property excluding clothing items. Guidelines for completing the inventory are as follows:

"1. Obtain a property bag and a property receipt form from the pre-booking room.

---

[2] Although the state's brief discussed the search-incident-to-arrest exception to the warrant requirement, the state explicitly disclaimed any reliance on that doctrine at oral argument.

"2. Write the Arrestee's name, AIRS #, and date in the spaces provided on the property bag.

"3. Enter the arrestee's name and AIRS # on the lines provided on the top and bottom of the property receipt form.

"4. Circle the items on the form that will be included in the arrestee's property bag and write a brief description of the item on the line provided if necessary. Please note that jewelry shall be listed as 'white metal' or 'yellow metal' instead of silver or gold as we are unable to verify the authenticity of metals. Stones will be listed by color; such as clear stone, blue stone, etc.

"5. LCAC is unable to accept knives regardless of size * * *, dangerous weapons including explosive devices; firearms and ammunition; illegal drugs; drug paraphernalia; matches; lighters; all food items (this includes beverage containers, alcoholic beverages and their packaging); items difficult to inspect without damage; items too large/bulky to fit in the property bag; propellants or liquids; medications not clearly marked or in their original containers; clothing or property that has been contaminated by dangerous chemicals; or any perishable biodegradable or vegetative substances including medical marijuana shall be returned to the arresting officer."

The policy goes on to provide detailed procedures for documenting and stowing the inventoried property.

Although we have had frequent occasion to address the validity of inventory policies since *Atkinson*, our decision in *State v. Taylor*, 250 Or App 90, 279 P3d 254 (2012), fully answers the question in this appeal. There, the defendant was arrested on suspicion of domestic assault. While the defendant was handcuffed, one of the arresting officers searched his pockets and discovered a cigarette box; the officers opened the box and discovered methamphetamine. *Id.* at 92. The state argued that the evidence would have inevitably been discovered when the defendant was booked into

the Umatilla County Jail (UCJ). The UCJ inventory policy provided, in relevant part:

> "**PROCEDURE**:
>
> "Processing and/or Lodging: When an arrestee is brought to the UCJ for processing and/or lodging *all personal property shall be inventoried. Property shall be searched to ensure no weapons, drugs, or contraband items* are brought into the UCJ and authorized property is properly stored. Any item which may cause concern for the safety and/or security of the UCJ, staff, or arrestee/inmate shall be considered contraband and may be confiscated.
>
> "Property of Arrestee—Pre-Booking Process: *Personal property from the arrestee's pockets[ ] (money, wallet, etc.)[,] outer clothing, purses, jewelry, belts, or other items deemed appropriate shall be removed, inventoried, searched, and documented* on the Property Receipt Form and safely stored. Officer and arrestee will sign the Property Receipt Form, noting the confiscation of property taken."

*Id.* at 93 (emphasis, brackets, and formatting in *Taylor*). Relying on the provisions that property "shall be searched," and that "personal property from the arrestee's pockets * * * or other items deemed appropriate shall be removed, inventoried, searched, and documented," the state argued that inventorying officers were implicitly required to open all containers and inventory their contents when the officers reasonably believed that the container contained contraband. *Id.* at 97-98 (brackets omitted; omission in *Taylor*).

We rejected that argument. We first noted that "[t]he policy is not, in fact, limited to opening only those containers that are objectively likely to contain contraband." *Id.* at 98. We stated that, "[r]ather than confining police discretion to the opening of containers uniquely designed or objectively likely to contain contraband, the policy gives wide latitude to an implementing officer to decide which closed containers to look inside and what degree of scrutiny to apply to any given piece of property." *Id.* Finally, we observed that "the policy is defective because it contains no complete and meaningful limitation on the scope of the inventory. It effectively authorizes a search of all property, including any closed container, regardless of what the container is

objectively likely to hold." *Id.* (citing *State v. Williams*, 227 Or App 453, 457, 206 P3d 269 (2009) ("An inventory policy that requires police to open all closed containers, regardless of whether they are likely to contain valuables, is overbroad.") and *State v. Kay*, 227 Or App 359, 206 P3d 208 (2009) (an inventory policy that permits all closed containers to be opened is constitutionally overbroad).

The Lane County Sheriff's Office inventory policy is constitutionally deficient for the same reasons articulated in *Taylor.* With respect to limitations on an inventorying officer's discretion to open closed containers, the policy requires the arresting officer to inventory all "pocket property," and states that the arresting officer is "responsible" for "thoroughly searching" the arrestee's "clothing" and inventorying the arrestee's *personal property* excluding clothing items." (Emphasis added.) The policy's terms do not purport to impose any sort of limitation—or even guidance—on when an officer may open a closed container as part of an inventory. That is, there is no language to prevent one officer from inventorying an arrestee's "personal property" as "one fishing tackle box" and a different officer from inventorying the fishing tackle therein. *See State v. Guerrero*, 214 Or App 14, 18, 162 P3d 1048 (2007) ("[I]n the classic example, the police must inventory a closed fishing tackle box as 'one fishing tackle box.'") (some internal quotation marks omitted). As a matter of interpretation, both acts would appear equally legitimate under the policy.

Any attempt to read the foregoing procedure as implicitly limited in scope by the types of contraband items listed in the policy results in the same conclusion. A sampling of the listed contraband items—a list that the policy identifies as one of the "[g]uidelines" for completing the inventory—includes such disparate items as "explosive devices," "all food items," "propellants or liquids," "medications not clearly marked or in their original containers," "clothing or property that has been contaminated by dangerous chemicals," "matches," and "vegetative substances." In view of the varied nature of the items on that list, it suffices to note that the policy at issue "is defective because it contains no complete and meaningful limitation on the

scope of the inventory. It effectively authorizes a search of all property, including any closed container, regardless of what the container is objectively likely to hold." *Taylor*, 250 Or App at 98. The pipe should have been suppressed.

Defendant also contends that the trial court erred in failing to suppress his statements concerning the pipe. As noted, defendant made those statements in response to questions posed by Quinones immediately after Quinones had opened the sock and inspected its contents. Under those facts, there was a "minimal factual nexus" between the unlawful search and the statements; the state does not make an argument that the statements "did not derive from the preceding illegality." *See State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). Defendant's statements should have been suppressed.

Reversed and remanded.