Argued and submitted July 31, 2013, in Case No. 11C40180, reversed and remanded; in Case No. 10C41726, affirmed May 7, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIE TERRY CHERRY,
*Defendant-Appellant.*

Marion County Circuit Court
11C40180, 10C41726;
A148450 (Control), A148417

325 P3d 813

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Defendant, who entered a conditional plea of guilty, ORS 135.335(3), to two counts of identity theft, ORS 165.800, and one count of giving false information to a peace officer, ORS 162.385, appeals from the resulting judgment, assigning error to the trial court's denial of his motion to suppress evidence.[1] We agree with defendant that (1) he was searched in violation of Article I, section 9, of the Oregon Constitution[2] when a jail deputy, pursuant to an invalid administrative inventory policy, removed checks from defendant's pocket, and (2) the evidence discovered as a result of the search must be suppressed. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress, and we reverse and remand the challenged judgment.

We review the trial court's denial of defendant's motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's findings of fact provided there is constitutionally sufficient evidence in the record to support them. *Id.* If the trial court did not make express findings of fact and there is evidence from which the facts could be decided in more than one way, we presume that the court decided the facts in a manner consistent with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Stated in accordance with those standards, the relevant facts are as follows.

Officer Bidiman of the Salem Police Department arrested defendant for giving false information to a peace officer. Bidiman brought defendant to the Marion County Jail, where Deputy Strubb inventoried defendant's property. Strubb discovered ten checks in defendant's pocket. The checks were from five different financial institutions and five different accounts. One check was made out to defendant, three were blank, and the remaining six were made

---

[1] This consolidated appeal includes two cases, Case No. 11C40180 (giving false information to a peace officer and identity theft charges) and Case No. 10C41726 (probation violation). Defendant's motion to suppress concerned evidence in Case No. 11C40180; he does not challenge the judgment in Case No. 10C41726, and, accordingly, we affirm.

[2] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

out to persons other than defendant. Strubb suspected that the checks were evidence of a crime, and he turned them over to Bidiman, who initiated a criminal investigation into defendant's possession of the checks. Bidiman questioned defendant and contacted some of the account holders. After completing his investigation, Bidiman filed a probable cause statement and cited defendant for two counts of identity theft.

The state charged defendant with one count of giving false information to a peace officer and two counts of identity theft. Defendant filed a motion to suppress "any and all evidence" obtained as a result of "the warrantless search of defendant and his belongings" on the ground that the search violated Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution. Specifically, defendant moved to suppress "evidence pertaining to [the] checks found on his person * * * and statements [he] made * * * in response to questions about these checks." In response, the state asserted that Strubb found the checks while inventorying defendant's property pursuant to Marion County Sheriff's Office Policy 3315, which is entitled "Inmate Personal Property."[3] The state introduced

---

[3] Policy 3315 provides, in pertinent part:

"This policy applies to all Institutions Division employees.

"1. The Sheriff's Office will receive, record, store, and release all inmate personal property, including monies in a safe, secure and systematic manner in accordance with the law.

"2. Deputies working in Intake will take custody of an inmate according to Policy 3310 Receiving Inmates and Policy 3320 Processing Inmates.

"3. Deputies will follow Policy 3135 Contraband and Control and the process outlined below when taking custody of a[n] inmate's property for temporary storage. This will be accomplished while the inmate is being booked.

"Ask the inmate if they have any cash, valuables or medications.

"Open closed containers to look for proof of identification, cash, valuables, medications or contraband.

"If the deputy finds identification bearing a different name than that of the inmate, the deputy will contact the arresting/transporting officer.

"If the deputy suspects the inmate may not be the owner or have the owner's approval to possess a valuable piece of property, the deputy will contact the arresting/transporting officer. This will most likely occur if the name on a money card, check or prescription medication is not in the inmate's name * * *."

(Underscore in original.)

a copy of Policy 3315 as Exhibit 1 at the hearing. The state further asserted that Strubb turned the checks over to Bidiman pursuant to a second policy, Policy 3135, which is entitled "Contraband Control." The state introduced a copy of Policy 3135 as Exhibit 2.

In reply, defendant argued that Policy 3315, upon which the state relied to justify Strubb's search of defendant and seizure of his property, is invalid for two reasons. First, defendant argued that Policy 3315 is invalid because it authorizes deputies to open all closed containers and, therefore, is overbroad. Second, defendant argued that Policy 3315 is invalid because, in his view, it authorizes deputies to conduct investigatory searches and to seize property as evidence of a crime without a warrant or an exception to the warrant requirement.

The trial court denied defendant's motion without discussion, simply stating, "I'm going to determine the search was lawful, the procedure was appropriate." Thereafter, defendant entered a conditional guilty plea to two counts of identity theft and one count of giving false information to a peace officer, reserving the right to challenge the court's denial of his motion to suppress. The court entered a judgment convicting defendant of those crimes, and this appeal followed.

Strubb's act of removing the checks from defendant's pocket was a warrantless search, *see State v. Hall*, 339 Or 7, 11, 115 P3d 908 (2005) (applying Article I, section 9, to evidence officer obtained by reaching into the defendant's pocket), and to be permissible under Article I, section 9, it must be justified by an exception to the warrant requirement, *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (holding that warrantless searches are *"per se* unreasonable unless falling within one of the few specifically established and well-delineated exceptions to the warrant requirement" (internal quotation marks omitted)). The state bears the burden of proving the constitutionality of a warrantless search. *Id.*

One exception to the warrant requirement is the "inventory" exception. *See State v. B. A. H.*, 245 Or App 203, 206, 263 P3d 1046 (2011) ("An administrative search is a

recognized exception to the warrant requirement."); *see also State v. Connally*, 339 Or 583, 587, 125 P3d 1254 (2005) (recognizing an inventory as one type of administrative search). "In general, a search qualifies for the exception if it is conducted for a purpose other than law enforcement, pursuant to a policy that is authorized by a politically accountable lawmaking body, if the policy eliminates the discretion of those responsible for conducting the search." *B. A. H.*, 245 Or App at 206 (internal citations omitted); *State v. Atkinson*, 298 Or 1, 9-10, 688 P2d 832 (1984) (identifying requirements for valid inventories under Article I, section 9). "The scope of the inventory must be limited to that—an inventory." *Atkinson*, 298 Or at 10; *State v. Guerrero*, 214 Or App 14, 18, 162 P3d 1048 (2007) ("The purpose of an inventory is to deal with property that properly comes into police custody in a noninvestigatory context."). If an inventory policy is overbroad, an inventory conducted pursuant to the policy violates Article I, section 9. *State v. Nordloh*, 208 Or App 309, 312-14, 144 P3d 1013 (2006) (holding that, because a valid inventory requires a properly authorized policy, suppression is required when an officer acts pursuant to an overbroad policy regardless of whether the officer's conduct violated the defendant's constitutional rights).

On appeal, defendant renews his arguments that Policy 3315 is invalid because it is overbroad and because it authorizes deputies to conduct investigatory searches and to seize property as evidence of a crime, without a warrant or an exception to the warrant requirement. In response, the state concedes that Policy 3315 is overbroad because it authorizes deputies to open all closed containers and, as a result, is inconsistent with the constitutional limits on inventories under Article I, section 9.[4] *Guerrero*, 214 Or App at 18 ("[A]s a general rule, an inventory policy cannot authorize the police to open closed containers; in the classic example, the police must inventory a closed fishing tackle box as one fishing tackle box." (Internal quotation marks omitted.)). We agree with the parties that Policy 3315 is overbroad and, therefore, cannot justify Strubb's search of defendant's pocket and inspection of the checks. *State v. Williams*, 227

---

[4] In its brief, the state does not defend Policy 3315, and at oral argument the state expressly conceded that Policy 3315 is overbroad.

Or App 453, 457, 206 P3d 269 (2009) ("An inventory policy that requires police to open all closed containers, regardless of whether they are likely to contain valuables, is overbroad." (Citations omitted.)).[5]

Our conclusion that Policy 3315 is invalid does not end the matter, however. The state argues, for the first time on appeal, that Strubb's search of defendant and seizure of his property were justified by Policy 3310, which is entitled "Receiving Inmates." The state did not introduce a copy of Policy 3310 in the trial court and now asks that we take judicial notice of Policy 3310, as well as two other policies— specifically, Policy 3170, "Inmate Searches," and Policy 3320, "Processing Inmates"—pursuant to OEC 201 and OEC 202.[6] The state asserts that Policy 3310 requires a deputy to remove all property from an inmate's pockets when an arresting officer brings the inmate into the jail's sally port, and the state further asserts that Strubb was acting pursuant to Policy 3310 when he discovered the checks in defendant's pocket.

Defendant replies that we should not address the state's new argument for three reasons. First, defendant argues that we cannot take judicial notice of the policies upon which the state's new argument is based because the policies

---

[5] *See also State v. Taylor*, 250 Or App 90, 97-98, 279 P3d 254 (2012) (inventory policy that provided that property "shall be searched to ensure no weapons, drugs, or contraband items are brought into [the jail]," was unlawful because "[i]t effectively authorize[d] a search of all property, including any closed container, regardless of what the container is objectively likely to hold"); *State v. Kay*, 227 Or App 359, 360, 206 P3d 208 (2009) (inventory policy that permitted an officer "to open *all* closed containers, [was] too broad to satisfy Oregon constitutional requirements" (emphasis in original)); *State v. Rottenkolber*, 221 Or App 503, 504, 190 P3d 494 (2008) (inventory policy that required police to inventory all property removed from a person before the person's belongings could be placed in secure storage at the police station was unlawful because "it authorized police to search all closed containers, not just those designed for, or likely to hold, valuables"); *State v. Jones*, 158 Or App 118, 120, 972 P2d 1217, *rev den*, 329 Or 287 (1999) (holding that officer's act of opening a folded tissue, a closed container, removed from the defendant's pocket was unconstitutional because the inventory provision upon which the state relied to justify the act, which allowed an officer conducting the inventory to open closed containers that the officer might return to the person while the person is in custody, could not constitutionally authorize the officer to open the containers to determine their contents).

[6] In its brief, the state requests that we take judicial notice of the policies "under OEC 201 and 202," but, at oral argument, it stated that it was relying only on OEC 201.

do not meet the requirements for judicial notice under either OEC 201 or OEC 202. *See* OEC 201(a)-(g) (judicial notice of adjudicative facts); OEC 202 (judicial notice of law); *see also State v. Marsh*, 78 Or App 290, 293, 716 P2d 261, *rev den*, 301 Or 320 (1986) (the state has the burden of establishing the validity of an inventory). Second, defendant argues that the policies the state has identified on appeal are part of a single administrative program for the processing of inmates, and because the program includes Policy 3315, which the state has conceded is invalid, the entire administrative program is invalid. *See Atkinson*, 298 Or at 10 (holding that an inventory "must be conducted pursuant to a properly authorized administrative program"). Third, defendant argues that we cannot affirm the trial court based on the state's new argument because, if the state had made the argument in the trial court, the record would have developed differently. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (identifying conditions that must be satisfied in order for a reviewing court to affirm a trial court on an alternative basis).

Because it is dispositive, we address only defendant's third argument. We have discretion to affirm a decision of a trial court if that decision was correct on a basis other than that upon which the trial court relied—sometimes referred to as the "right for the wrong reason" principle. *Id.* at 659. When reviewing a trial court's ruling, "'we will affirm that ruling on appeal, even if the trial court's legal reasoning for the ruling was erroneous, if another legally correct reason and, to the extent necessary, the record developed in the trial court support the ruling.'" *Id.* (quoting *State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000)). If the question presented required any factfinding,

> "then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Id.* at 659-60. When "the losing party might have created a *different* record below had the prevailing party raised [the] issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." *Id.* at 660 (emphasis in original).

Here, if the state had argued that Strubb's actions were justified by Policy 3310, the record may have developed differently in several respects that could have affected the disposition of the issue. First, defendant could have litigated whether the version of Policy 3310 upon which the state now relies was in effect on the date of Strubb's search of defendant and seizure of his property. Second, defendant could have raised his argument that all of the policies are part of a single administrative program, which is invalid because of the overbreadth of Policy 3315, and he could have presented evidence in support of that argument, including testimony about the procedures by which the policies were adopted and how the policies relate to each other. And, third, defendant could have challenged whether Strubb actually acted pursuant to or in accordance with Policy 3310.

According to the state, Policy 3310 authorizes deputies to remove property from an inmate's pockets when the inmate is brought into the jail's sally port, and that act occurs prior to the inventory of an inmate's property during the booking process described by Policy 3315, upon which the state relied in the trial court. The state asserts:

> "The pre-booking inventory procedure specified in Policy 3310 that is applicable here does not direct (or permit) a deputy to open closed containers but solely directs the deputy to remove all items from an arrestee's person and place them into a plastic bag. The deputy here limited his actions to the nondiscretionary and permissible directives of Policy 3310 and discovered plain-view evidence of crime."

If the state had made that argument in the trial court, defendant could have questioned Strubb about whether he removed the checks from defendant's pocket in the sally port, which would support a finding that he was acting pursuant to Policy 3310, or whether he removed the checks during the inventory of defendant's property in the booking

room, which would support a finding that he was acting pursuant to Policy 3315.

More importantly, defendant could have questioned Strubb about how he saw the writing on the checks. Policy 3310, upon which the state relies on appeal, authorizes officers only to remove property and place it in a plastic bag; as quoted above, according to the state, Policy 3310 "does not direct (or permit) a deputy to open closed containers but solely directs the deputy to remove all items from an arrestee's person and place them into a plastic bag." But Policy 3315, upon which the state relied in the trial court, requires officers to determine whether any of an inmate's property is evidence of a crime. Therefore, defendant could have questioned Strubb about whether, for example, he unfolded or examined any of the checks and, if so, whether he did so in order to determine whether they were evidence of a crime. If the purpose of examining the checks was to identify evidence of a crime, that would support a finding that Strubb was acting pursuant to Policy 3315, which, as discussed above, 262 Or App at 617, is facially invalid. *See, e.g.*, *Jones*, 158 Or App at 120. Even if the court found that Strubb was acting pursuant to Policy 3310, evidence that Strubb examined the checks would support a holding that his actions were unconstitutional because he did not follow the procedures specified in Policy 3310. *See Atkinson*, 298 Or at 10-11 (holding that "[t]he degree to which an inventorying officer may scrutinize the items uncovered is limited" and suggesting that an officer could not examine documents, such as "a checkbook, an installment loan book, and a social security status card" as part of an inventory). Because the record is not "the same one that would have been developed" had the state raised the argument below, and a different record could have affected the disposition of the issue, the state's new argument is not one that we can address as an alternative basis for affirmance. *Outdoor Media Dimensions Inc.*, 331 Or at 660.[7]

---

[7] *See also State v. Holiday*, 258 Or App 601, 609-11, 310 P3d 1149 (2013) (declining to address the state's inevitable discovery theory to justify officers' warrantless search as an alternative basis for affirmance where the state argued below that the defendant was trying to evade an officer by hiding in a locked public restroom and that once the officer unlocked the door and the defendant came out, the evidence was in plain view); *State v. Woodall*, 181 Or App 213, 218-21, 45

In sum, we conclude that, in the trial court, the state failed to carry its burden of establishing that the warrantless search of defendant's person and seizure of his property was a valid inventory under Article I, section 9, because the state relied on an invalid inventory policy.[8] In addition, we conclude that we cannot address the state's new argument in support of the search and seizure because the record could have developed differently had the state made the argument in the trial court. Therefore, we reverse the convictions in Case No. 11C40180 and remand for further proceedings.

In Case No. 11C40180, reversed and remanded. In Case No. 10C41726, affirmed.

---

P3d 484 (2002) (declining to address the state's search incident to arrest theory to justify officers' warrantless search of automobile as an alternative basis for affirmance where the state relied on the automobile and inventory exceptions at trial); *cf. Jones*, 158 Or App at 121 (declining to reverse trial court's suppression of evidence where the state did not adequately raise a probable cause argument that a tissue containing drugs had announced its contents in such a manner that the officer could open it without a warrant).

[8] Because we reverse and remand based on defendant's argument that Policy 3315 is overbroad, we do not reach defendant's argument that the policy is invalid because it authorizes investigative searches and seizures of evidence without a warrant or an exception to the warrant requirement; nor do we reach defendant's Fourth Amendment argument.