## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JETHRO JEFFREY KILELEMAN TOWAI,
*Defendant-Appellant.*

Washington County Circuit Court
C150351CR; A159835

395 P3d 638

Sara Werboff, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Sercombe, Presiding Judge, and DeHoog, Judge, and Flynn, Judge pro tempore.

## FLYNN, J., pro tempore

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894, and interfering with a peace officer, ORS 162.247, raising two assignments of error. First, defendant assigns error to the trial court's denial of his motion to suppress evidence that officers discovered inside of a backpack that defendant was carrying, after they took him into custody for interfering with a peace officer.[1] Defendant argues that the officers violated his rights under Article I, section 9, of the Oregon Constitution, when they looked in his backpack. The state argues that the officers discovered the evidence pursuant to a valid inventory and, alternatively, that the officers already possessed probable cause to arrest defendant for possession of methamphetamine and lawfully searched the backpack incident to that arrest. Second, defendant asserts that the trial court plainly erred when it imposed $629 in attorney fees and that we should exercise our discretion to correct that error. We reject defendant's first assignment of error because we conclude that the officers discovered the methamphetamine pursuant to a valid inventory of defendant's belongings. However, we agree with defendant that the imposition of attorney fees was plain error, and we exercise our discretion to correct it.

The pertinent facts are not in dispute. Two Tigard Police Officers were conducting surveillance on a suspected drug house around midnight when they saw several people riding bicycles in front of the house. Defendant was riding one of the bicycles and had no front light, which one of the officers described as a traffic violation. That officer, Nunley, pulled up behind defendant in his patrol car and activated the car's overhead lights, at which point defendant looked at him and continued to ride away, turning down a narrow path where the patrol car could not follow. Unbeknownst to defendant, he was riding directly toward the second officer,

---

[1] Defendant was carrying both a backpack and a bag, and describes the record as unclear as to whether the backpack or the bag contained the evidence. However, he does not suggest that our analysis would differ in any way if the evidence were found in his bag rather than his backpack, or vice versa. The state describes the evidence as found in defendant's backpack, so we will use that terminology as well.

Swain, who "escorted him to the ground." When Nunley arrived, the officers placed defendant in handcuffs and walked him to the patrol car, along with a backpack that defendant had with him. Nunley patted defendant down to check for weapons and found a glass pipe of the type used for smoking methamphetamine. Nunley then looked inside the backpack and found a "little plastic thing to hold change." Nunley opened that container and found a bag full of a crystalline substance that later tested positive for methamphetamine.

At the hearing on the motion to suppress, Nunley testified that he looked through defendant's backpack and opened the change holder because he was required to inventory defendant's belongings before taking him to jail. When defense counsel asked whether Nunley could "reference" an "applicable code that warrants this—this type of inventory," Nunley responded that the provision "is in our municipal code and I don't know the numbers at the top of my head but I have read it." The state introduced as exhibits the text of multiple inventory policies, including the Tigard Municipal Code provision regarding "Authority to Inventory the Personal Effects of a Person Taken into Custody." Nunley also testified that he looked in the backpack because he had found the glass pipe. Thus, the state argued, as an alternative theory, that the evidence was discovered pursuant to a lawful search incident to arrest for possession of methamphetamine. The trial court denied defendant's motion without elaborating on the reasons for the denial.

After a stipulated facts bench trial, the court found defendant guilty of unlawful possession of methamphetamine, ORS 475.894, and interfering with a peace officer, ORS 162.247. Defendant was convicted and sentenced to 18 months of formal probation. The court also ordered defendant to pay $629 in attorney fees.

On appeal, defendant does not dispute that the initial stop was lawful or that the officers had probable cause when they arrested him for interfering with a peace officer. Nor does defendant argue that opening the small change holder exceeded the scope of a lawful inventory of defendant's

backpack. Instead, he argues that the state failed to prove that the officers opened and looked through his backpack pursuant to a lawful inventory.[2]

## LAWFUL INVENTORY

Warrantless searches are "*'per se* unreasonable'" under Article I, section 9, of the Oregon Constitution, unless the search is conducted pursuant to a recognized exception to the warrant requirement. *State v. Cherry*, 262 Or App 612, 616, 325 P3d 813 (2014) (quoting *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). One recognized exception is an 'inventory' of property that has lawfully come into police custody. *Cherry*, 262 Or App at 617. The state bears the burden to prove that the challenged evidence was discovered through a lawful inventory. *State v. Brown*, 229 Or App 294, 302, 211 P3d 315 (2009).

The Supreme Court has identified the basic principles of a valid inventory, on which we have elaborated. *State v. Eldridge*, 207 Or App 337, 341, 142 P3d 82 (2006) (citing *State v. Atkinson*, 298 Or 1, 9-10, 688 P2d 832 (1984) (applying the test to the inventory of a vehicle)); *see also State v. Guerrero*, 214 Or App 14, 18, 162 P3d 1048 (2007) (applying the *Atkinson* standard to inventory of personal belongings). The first rule is that the property being inventoried must be lawfully in the custody of the officer conducting the inventory. *State v. Stinstrom*, 261 Or App 186, 190, 322 P3d 1076 (2014) (citing *Atkinson*, 298 Or at 8-10). In addition, the inventory must be conducted pursuant to a policy that has been adopted by "politically accountable officials." *Atkinson*, 298 Or at 6. The officer performing the inventory must not have "deviated from the established policy or procedures of the particular law enforcement agency," which can occur if the officer scrutinizes the inventoried items beyond "the extent necessary to complete the inventory." *Id.* at 10. Finally, if those requirements are met, then it is the court's task to "assure that such policies and procedures as are adopted do not violate constitutional guarantees." *Id.*

---

[2] Defendant also disputes the state's alternative theory that the officers found the methamphetamine as part of a lawful search incident to arrest. However, our conclusion that the officers looked in defendant's backpack pursuant to a lawful inventory makes it unnecessary to address that argument.

at 6; *see also Guerrero*, 214 Or App at 19 (explaining that court should first consider whether officers complied with an adopted policy, because only then "would we need to consider whether the policy was constitutionally permissible").

To be constitutionally permissible, the policy must eliminate any role for officer discretion regarding the inventory process. *Guerrero*, 214 Or at 21. *Atkinson* described this as a requirement that the policy must be "designed and systematically administered so that the inventory involves no exercise of discretion." 298 Or at 10. Moreover, if the adopted policy is overly broad, then "an inventory conducted pursuant to the policy violates Article I, section 9." *Cherry*, 262 Or App at 617.

Here, defendant does not dispute that his backpack was lawfully in the custody of the officers when Nunley took defendant into custody. Nor does he contend that Nunley deviated from the established policies or inventory procedures set out in the Tigard Municipal Code section that provides for inventory of personal effects.[3] He also conceded at oral argument that the inventory policy set forth in the Tigard code is not subject to a constitutional challenge on the basis of being overly broad or allowing officer discretion. Rather, defendant identifies two ways in which, he argues, the state failed to prove that the officers were following a constitutionally valid inventory policy. First, he argues that the state failed to prove which policy the officers relied upon and, thus, that the state could not prove that the officers followed a constitutionally permissible policy. Second, emphasizing *Atkinson*'s holding that officers must act pursuant to a policy that is "designed and systematically administered so that the inventory involves no exercise of discretion," defendant argues that the state failed to prove that the Tigard Municipal Code policy is "systematically administered." We reject both propositions.

Defendant's argument that the state failed to prove that the officers were following a valid inventory policy

---

[3] The code specifically provides that officers shall inventory the contents of "[a]ll containers designed for carrying valuables, including, but not limited to, wallets, purses, coin purses, fannypacks, and backpacks[.]" Tigard Municipal Code 2.30.060.B.3.

focuses on his understanding that Nunley's testimony initially suggested uncertainty about *which* policy he was following. However, when defense counsel asked Nunley to identify a specific provision that "warrants" the type of inventory that Nunley performed, Nunley identified the municipal code. Moreover, we have held that the state can prove a lawful inventory even if the officer does not testify "that he or she subjectively believed that he or she was acting pursuant to an inventory policy," at all. *Brown,* 229 Or App at 303. Here, the state introduced the text of the Tigard Municipal Code section governing inventories of personal effects, Nunley specifically identified the Tigard code as authorizing the inventory that he performed, and defendant does not suggest any way in which the inventory process that Nunley described deviated from the municipal code process. Under the circumstances, the record establishes that the officers were following a lawful inventory policy.

Defendant also argues that, even if the officers were following the Tigard code inventory policy, the state failed to establish that the policy is systematically administered to involve no exercise of discretion regarding whether to perform inventories under the circumstances in this case— an inventory in "the field" for an individual who is being taken by Tigard police to the county jail, rather than an inventory at the Tigard Police Station. We conclude that the state's evidence satisfies its burden. The code, itself, specifies that "every person taken into lawful custody by the police department shall have his or her personal effects inventoried." Tigard Municipal Code 2.30.060.A. And there is no dispute that defendant had been taken into lawful custody by the Tigard police. Nunley's testimony is evidence that the Tigard policy is systematically administered to include "field" inventories of persons taken into the lawful custody of the Tigard police. Specifically, he testified that he is required to inventory bags and backpacks belonging to individuals who will be taken to the Washington County Jail because the jail does not accept those items, and the items are, instead, held by the Tigard Police until the person is able to retrieve them. Nunley also testified that he inventoried defendant's bag and backpack pursuant to that policy.

Defendant suggested at oral argument that the state must offer evidence that other officers conduct field inventories under the same circumstances, in order to prove that the Tigard code inventory policy was being "systematically administered so that the inventory involves no exercise of discretion." *See Atkinson*, 298 Or at 10. However, defendant did not argue below that the state needed that kind of evidence to prove that officers acted pursuant to a "systematically administered" inventory policy, and it is not an argument that this court has previously addressed; accordingly, we decline to consider it in this appeal. Under the circumstances of this case, we affirm the trial court's determination that the officers conducted a lawful inventory of defendant's backpack.

## ATTORNEY FEES

Next, we address defendant's challenge to the imposition of attorney fees. The trial court ordered defendant to pay $629 in fees for his court-appointed attorney without evidence that defendant "is or may be able to" pay the fees, as required by ORS 151.505(3) and ORS 161.665(4). Indeed, the court observed that defendant still owed restitution on another case and that "this fellow's going to have a hard time making any payments but hopefully he'll get that in order."

Defendant acknowledges that he did not object to the court's imposition of attorney fees, but he argues that the error is plain and urges us to exercise our discretion to correct the error because the amount of the fees presents a substantial hardship for defendant. *See* ORAP 5.45(1); *see also State v. Serrano*, 355 Or 172, 179, 324 P3d 1274 (2014), *cert den*, ___US ___, 135 S Ct 2861, 192 L Ed 2d 899 (2015) (An error is plain when it is an error of law that is apparent, meaning that the point must be obvious, not reasonably in dispute, and appear on the face of the record.).

In past opinions, when presented with a record that is silent as to evidence to support a finding that the defendant has an ability to pay the fee, we have routinely described the award of fees as plain error. *See, e.g., State v. Mickow*, 277 Or App 497, 500, 371 P3d 1275 (2016) (explaining that the statutes "require that finding to be made [a]nd

our cases hold that a trial court errs as a matter of law if it orders a defendant to pay court-appointed attorney fees without making that required finding"). We emphasized in *Mickow* that

> "we do not assume that the trial court complied with applicable statutory procedures unless the record provides some affirmative support for that assumption. Where the record contains no affirmative indication that the trial court complied with the statutory requirements for imposing fees, we will conclude that the court did not, in fact, do so."

*Id.*

The state argues, however, that defendant has not demonstrated that the error is "obvious, not reasonably in dispute," *i.e.*, plain, because "the trial court may well have relied on the information collected to determine defendant's eligibility for court-appointed counsel"—information contained in defendant's sealed (and unopened) confidential affidavit of eligibility—as "evidence of defendant's ability to pay the fees." We have recently rejected that same argument in *State v. Runnels*, 283 Or App 512, 515, 390 P3d 1120 (2017). As we explained in *Runnels*, the possibility that the trial court might have considered an affidavit that may have contained information supporting an ability to pay fees is not an "'affirmative indication' in the record that the court made the predicate determination required by statute." *Id.* at 515 (quoting *Mickow*, 277 Or App at 500). As in *Runnels*, the trial court's error here was plain.

We also conclude that it is appropriate for us to exercise our discretion to correct the error because the amount, especially taken into consideration with other fines imposed in this case, presents a substantial hardship to defendant. *See State v. Housego*, 276 Or App 550, 552, 368 P3d 62 (2016) (exercising discretion to correct error as to $360 attorney fee award when the defendant was sentenced to 18 months' probation and had substantial additional obligations in the form of a fine and costs). Therefore, we reverse the trial court's imposition of attorney fees.

Award of attorney fees reversed; otherwise affirmed.