DeVORE, P.J., concurring
I concur in the disposition of this case, but I do so based on the narrow question presented, as I understand it. I write separately to express concern that the majority's opinion could be read, or perhaps misread, to decide an important question that was not contested and should remain an open question for careful consideration later. That is, should an otherwise permissible inventory of property on a person, revealing evidence found in the person's pockets in booking at a police station, be ruled impermissible under Article I, section 9, of the Oregon Constitution by reason of *685 an unrelated part of an *464 inventory policy, such as one relating to closed containers? For the reasons I explain, I believe that the question remains unanswered.
To identify the narrower issue presented, I begin with the suppression motion in the trial court. In relevant part, defendant moved to suppress evidence of the methamphetamine found in his pocket at jail because the pat-down search at the scene was not necessitated by officer safety, nor justified as a search incident to arrest for a domestic violence incident. The trial court agreed, and those issues are not presented.
The state responded that the warrantless search could be excused by the doctrine of inevitable discovery. The state offered written policies numbered B-103 and B-301 to show that, upon a suspect's arrival at the jail, a booking deputy is required to "conduct a thorough pat down search of the inmate removing any items found from pockets, etc." Presumably, the state offered those inventory provisions because those were the provisions that had directed the inventory of defendant's person at the jail. The state did not offer any part of an inventory policy that concerned closed containers or impounded vehicles; a closed container was not involved.[1] Nonetheless, when a corrections officer testified, authenticating the provisions requiring an inventory of property on a person, he was asked if he would "search all closed containers pursuant to this policy." He agreed that he would. Given that answer, defendant argued that the inventory policy, allowing search of any closed container, was overbroad.
The trial court did not rule on the issue of overbreadth involving closed containers. Instead, the trial court found "that the Grant County Jail has an inventory policy that was followed with respect to Defendant[.]" The court concluded "that the methamphetamine would have been inevitably discovered upon the search of Defendant's belongings at the Grant County Jail pursuant to the Grant County Jail's inventory policy ***." The court denied that aspect of the suppression motion.
*686 On appeal, defendant argues that the inventory of defendant's person cannot be used to justify evidence of the methamphetamine as a matter of inevitable discovery. Defendant argues that an inventory policy that, without limitation, allows a search of closed containers is constitutionally invalid.[2] To defendant, the invalidity of an unrelated part of an inventory policy renders impermissible even an inventory conducted pursuant to a different part of the policy that had directed the inventory that was done. To defendant, all parts are but one policy that must be constitutional.
On appeal, the state did not engage defendant's "one policy" proposition. At oral argument, this court pressed the state to clarify its position. The state responded that, although it would urge a narrower reading of case law than defendant, the state did not "go into" defendant's proposition because the state did not see the issue as presented in this case. The state did not brief or develop a contrary argument, because it responded with a different argument that the state believed was dispositive. The state argued that the testimony of the corrections officer could not be accepted as evidence of the jail's policy on inventories of closed containers. The state argued that an inventory policy could not be found to be overbroad based on a part of the policy that did not appear in the record. The state argued that, at most, the officer's testimony merely expressed his personal belief about the policy on closed containers and that the court "should not hold an inventory policy unconstitutional based entirely on speculation about its contents."
I join that part of the majority's opinion that rejects the state's argument that the officer's testimony could not be taken as evidence of the jail's policy on closed containers. Given no other evidence of a policy on closed containers and given the state's tacit concession of the proposition that an unrelated part of an inventory policy invalidates the whole policy, I concur in the decision to *465 reverse and remand defendant's judgment of conviction.
I am concerned that we may appear to decide more than that which was briefed, argued, or developed for *687 decision. Or, we may decide more than is necessary. The majority recites defendant's proposition, that which the state did not dispute, and then agrees with that proposition:
"Defendant relies on State v. Nordloh , 208 Or. App. 309, 144 P.3d 1013 (2006), and State v. Cherry , 262 Or. App. 612, 325 P.3d 813 (2014), for the proposition that, if any part of the inventory policy is invalid, even if the inventory at issue would not have been conducted in accordance with the invalid portion, then any evidence discovered must be suppressed as part of an unlawful inventory. On this record, and given the particular and limited nature of the state's response, *** we agree."
290 Or. App. 675, 682, 414 P.3d 458. My concern is that, with this decision, we endorse a misreading of Nordloh and Cherry . By doing so, we may, for the first time here, actually decide a case based on that proposition without benefit of briefing or development of the issue.
When police take custody of a person or property, an inventory is permitted under Article I, section 9, of the Oregon Constitution under appropriate circumstances pursuant to local policy. See State v. Atkinson , 298 Or. 1, 10, 688 P.2d 832 (1984) (automobile inventory). Summarizing those circumstances, we have stated:
"[A]n administrative search must meet several requirements in order to be 'reasonable' under Article I, section 9 : (1) the search must be conducted for purposes other than criminal law enforcement; (2) the search must be conducted pursuant to a policy that is authorized by a politically accountable lawmaking body; (3) the policy must limit the discretion of those conducting the search; (4) the scope of the search authorized must be reasonable in relation to its purpose; and (5) the person performing the search must act within the bounds of the policy."
State v. Snow , 247 Or. App. 497, 504, 268 P.3d 802 (2011) (citations omitted).
Although the courts have employed these standards with regard to inventories of property on persons, of property in closed containers, and of property in motor vehicles, defendant has presented no good authority to suggest that any Oregon case has squarely decided the effect of the invalidity *688 of an unrelated part on the whole inventory policy. I suggest that neither Nordloh nor Cherry is such authority. Instead, Nordloh has language that might be misunderstood to that effect, but the case did not present our fact pattern, while Cherry has our fact pattern, but the case did not present the question.
In Nordloh , the city's policy provided that "all impounded vehicles shall be inventoried" and that "[a]ll luggage and other containers will be opened and inventoried." 208 Or. App. at 311, 144 P.3d 1013. The policy was not narrowed to opening only containers that are designed to hold valuables. The defendant's car was impounded in a traffic stop, and a closed container-a small zippered pouch-was found in a hole in the car door. To justify the faulty policy, the state argued that the inventory was not unconstitutional because the officer had actually searched only a container designed to hold valuables. Id. at 312, 144 P.3d 1013. In other words, the state argued that it should not matter that the policy was written wrong-too broadly-because this defendant had a container of the sort that could have been searched if a policy were written correctly. This court was unpersuaded by the state's "so what" argument. This court responded:
"The power to inventory a vehicle's contents exists only pursuant to a properly authorized policy. Whether the policy itself is properly authorized does not depend on the circumstances of the application of the policy to a particular defendant. It instead depends on the reasonable relationship between the conduct permitted under the policy and the government's interest in protecting property, eliminating false claims, and preventing injury. No such reasonable relationship exists in this case."
Id . at 313, 144 P.3d 1013 (citations omitted; emphasis added). With that emphasized language, the court did not announce the proposition *466 that defendant here posits-that it is immaterial whether the inventory that occurred is unrelated to an invalid part of a policy. Rather, with the emphasized portion of the language above, the court rejected the state's argument that the policy should not matter to that defendant, who could have been subjected to a valid container policy. While that emphasized language may be misunderstood, one thing should not be. The case only involved a closed container and a closed container policy. The case did not present *689 the fact pattern of the case at hand. Thus, Nordloh should not be read to declare that the invalidity of an unrelated part of an inventory policy renders invalid all parts of an inventory policy.
In Cherry , the fact pattern was similar to this case, but the question presented there was different from the question presented here. When the defendant was being booked into the county jail, a deputy inventoried the defendant's property, finding checks in his pocket. 262 Or. App. at 614-15, 325 P.3d 813. Based on those checks, the defendant was charged with identity theft. The defendant moved to suppress the evidence as the result of an impermissible search under state and federal constitutions. When the state offered Policy 3315 as requiring an inventory of an inmate's personal property, the defendant rejoined that the policy improperly authorized a search of all closed containers. Id. at 615-16, 325 P.3d 813. The state conceded that the policy was overbroad in that way and did not argue that the part of the policy on closed containers was unrelated to an inventory of property on the defendant's person. Instead, the state sought to justify the search by offering new arguments for the first time on appeal and asking the court to take judicial notice of three additional documents-Policy 3310, Policy 3170, and Policy 3320. The state tried to interject new policies in order to argue that even before an inventory under Policy 3315, the newly offered Policy 3310 required deputies to remove property from an inmate's pockets; it did not direct opening of closed containers. The defendant objected to the state's new argument on appeal and to the court taking judicial notice of added policies. The defendant's objections and this court's response deserve careful reading, because the court cited Nordloh , making a parenthetical comment that could be misread, and because the court refrained from sustaining the defendant's objection that invalidity of part of a policy invalidates the whole policy.
When setting up the issue presented, Cherry recites the law relating to inventories. In that preliminary discussion, the court recites:
"If an inventory policy is overbroad, an inventory conducted pursuant to the policy violates Article I, section 9.
*690 Statev. Nordloh , 208 Or. App. 309, 312-14, 144 P.3d 1013 (2006) (holding that, because a valid inventory requires a properly authorized policy, suppression is required when an officer acts pursuant to an overbroad policy regardless of whether the officer's conduct violated the defendant's constitutional rights )."
Id. at 617, 325 P.3d 813 (emphasis added). For the reasons recounted above, I do not read Nordloh to mean that an inventory that involved a defendant is unconstitutional even when the inventory of the defendant's property was not directed by an unrelated and unconstitutional part of an inventory policy. Nor do I read Nordloh to say that suppression is required even when the particular inventory conducted did not violate defendant's rights. Those were not the facts of Nordloh , nor the meaning of the court's rejection of the state's "so what" argument.
Critically, Cherry refrained from adopting the defendant's argument that invalidity of part means the invalidity of the whole. That argument was the second of three objections that the defendant made to the state's new evidence on appeal. The court recited:
"Second, defendant argues that the policies the state has identified on appeal are part of a single administrative program for the processing of inmates, and because the program includes Policy 3315, which the state has conceded is invalid, the entire administrative program is invalid."
Id . at 619, 325 P.3d 813 (emphasis added). The court responded that, "[b]ecause it is dispositive, we address only defendant's third argument." Id . (emphasis added). The court did not address the second argument.
*467 Instead, the court agreed with the third objection that, because the record would have developed differently in the trial court if the state had presented its new argument there, the court should not entertain the state's new argument on appeal. Id . at 620-21, 325 P.3d 813 (citing Outdoor Media Dimensions, Inc. v. State of Oregon , 331 Or. 634, 660, 20 P.3d 180 (2001) ). Thus, Cherry was decided on the original policy part that the state had conceded was invalid; the court decided the case without deciding that an unrelated and invalid part of an inventory policy renders another part of an inventory policy automatically invalid.
*691 My concern in this case is that, by announcing our "agreement" with defendant's proposition, we validate an unexamined proposition that was not contested on appeal, or given critical review. Indeed, because a single sentence in Nordloh and a citation's parenthetical in Cherry may have been misunderstood, we are now witness to "issue creep," where loose language evolves into law without being actually presented for decision in those cases or even this one. Upon careful examination, perhaps defendant's proposition should be law. But at least two flaws may trouble that proposition.
First, defendant's proposition that the invalidity of an unrelated part renders invalid another part of an inventory policy rests upon a flawed premise that the parts are not unrelated. Put in other words, defendant's premise is that, for purpose of analysis, the distinct parts of an inventory policy-whether involving a person's pockets, closed containers, or motor vehicles-are not, in a sense, severable. An inventory policy, however, is not a contract. As to contracts, the court would look for a severability clause or at least for the intent of the parties as to severability of an invalid provision from others. See Leach v. Scottsdale Indemnity Co. , 261 Or. App. 234, 249, 323 P.3d 337, rev. den. , 356 Or. 400, 339 P.3d 440 (2014) (an agreement contained no severability provision or other explicit indicator of parties' intent about the effect if any part of the agreement was determined to be unenforceable). That may not be the proper approach here. An inventory policy is an enactment like a statute. As to statutes, this court has observed:
"We will not declare an entire statute unconstitutional based on the unconstitutionality of one of the statute's parts; rather, the preferred remedy is to sever the unconstitutional provision and salvage the remainder."
State v. Borowski , 231 Or. App. 511, 526, 220 P.3d 100 (2009). Of course, courts are encouraged to take that approach with statutes because ORS 174.040 requires it.[3] But that approach *692 may be more than just the result of a severability clause or severability statute. "The issue is not exactly whether an unconstitutional part can be severed." Id . The issue is, more precisely, whether the legislature would have preferred that the entire statute fail. Id . at 526-27, 220 P.3d 100 (concluding that the legislature would have preferred a statute to fail as a whole).
Here, the issue may be whether Grant County would prefer, when the part of an inventory policy on containers is invalid, that the part of an inventory policy on search of a person should remain enforceable. Given the difference between an inventory of property on a person, an inventory involving containers, and an inventory of contents of cars, it may be difficult to imagine Grant County would prefer that invalidity of part requires invalidity of all parts. A preference for invalidity of the whole policy is particularly unlikely because the invalidity of the provision on containers is a unique error involving the failure to specify that only containers suitable for valuables be opened. It is a unique problem that does not arise in the course of a *468 pat-down of a person or the inventory of a vehicle. Thus, to assume defendant's premise-the invalidity of all parts of an inventory policy-seems to be a particularly unwise assumption, especially when the question has not been properly presented, developed, or examined.[4]
Second, to assume that a conviction should be reversed, due to an unrelated part of an inventory policy that did not direct the particular inventory, may be contrary to the principle that a defendant must establish that a constitutional violation caused him harm. See State v. Torres , 206 Or. App. 436, 445, 136 P.3d 1132 (2006) ("The burden is on a defendant who appeals his conviction to show that a court's *693 error affected a substantial right."); Cf. State v. Lotches, 331 Or. 455, 487, 17 P.3d 1045 (2000), cert. den., 534 U.S. 833, 122 S.Ct. 82, 151 L.Ed.2d 45 (2001) ("A defendant in a criminal case assigning error to the exclusion or admission of evidence must establish that the error was not harmless."); see also former ORS 138.230 (court shall disregard errors, defects or exceptions that do not affect the substantial rights of the parties).[5] Defendant's proposition would seem to contravene the requirement that he must show that he has suffered a deprivation of a substantial right. At least that would seem so, unless we accept as on faith that the invalidity of any part of an inventory policy invalidates all other parts. At least to me, to argue that defendant was harmed by an unconstitutional part of the policy that did not direct the inventory assumes too much.
For those reasons, I would not agree with defendant's proposition that the invalidity of an inventory policy as to containers invalidates the inventory of property found on a person. I believe an important question, not addressed in Nordloh or Cherry , remains unanswered and should be considered in the future where the question is contested. Because the state chose not to debate the question, thinking it was not presented, I join in the majority's decision insofar as it rejects the state's argument that the officer's testimony could not suffice to prove the container policy to be invalid. Until the larger question is presented and fully developed, I would prefer to say no more than this.

Neither party contends defendant's pocket is a closed container.

See, e.g. , State v. Guerrero , 214 Or. App. 14, 18-21, 162 P.3d 1048 (2007) (discussing parameters of inventories).

ORS 174.040 provides:
"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:
"(1) The statute provides otherwise;
"(2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or
"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

To be sure, the state bears the burden of proving the constitutionality of a warrantless search. Cherry , 262 Or. App. at 616, 325 P.3d 813. But that should not necessarily mean that the state must prove the constitutionality of unrelated provisions if they are not necessary to establish the constitutionality of the provision at issue.

Former ORS 138.230 (2015) was repealed by Or. Laws 2017, Ch. 529, section 26. Because the judgment in this case was entered before the January 1, 2018, the effective date of SB 896, its provisions do not apply. Or. Laws 2017, ch. 529, § 28 (providing that SB 896 applies "on appeal from a judgment or order entered by the trial court on or after the effective date of this 2017 Act").